[Civ. No. 586.    Third Appellate District.—August 21, 1909.]

DONALD SCALLY, a Minor, by MARY SCALLY, His Guardian Ad Litem, Respondent, v. W. T. GARRATT & CO., a Corporation, Appellant.

NEGLIGENCE—IMPROPER EMPLOYMENT OF YOUNG LAD AT DANGEROUS MACHINE—PERMANENT INJURY TO HAND AND ARM—DAMAGES NOT EXCESSIVE.—In an action to recover damages for permanent injury to the hand and arm of a young lad under twelve years of age, who was improperly placed upon a raised platform built for him upon which to operate a dangerous machine in defendant's foundry, *held*, in view of all the evidence, that it cannot be said that a verdict for damages in the sum of $7,500 was excessive, or that it indicates that the jury were influenced by any other motive than a conscientious consideration of the facts adduced before them.

ID.—LOSS OF MUSICAL ABILITY.—The fact that the plaintiff, as the result of the injury, will be unable to pursue muscial studies on lines for which he evidently possesses peculiar talent, is a matter of no little importance, and was a proper item for the consideration of the jury in the fixing of such compensation for the great loss he has sustained through the negligence of the defendant as would be fair and just.

ID.—FUNCTION AND MOTIVES OF JURY—PRESUMPTION—POWER OF COURT. The law that imposes on the jury the exclusive power of examining the facts and circumstances before them, and valuing the injury and awarding compensation in the shape of damages, as to which there is no definite standard, favors the presumption that they are actuated by pure motives; and it is not until the result of this deliberation appears in a form calculated to shock the understanding and impress no dubious conviction of their prejudice and passion that courts have found themselves compelled to interpose.

ID.—PROPER INSTRUCTIONS—DAMAGES WHICH PLAINTIFF "OUGHT TO RECOVER"—FUTURE "SUFFERING."—Instructions on the subject of

damages, based upon the evidence, to the effect that if the jury find therefrom that plaintiff sustained the injuries complained of through defendant's negligence, without plaintiff's negligence, they should find for the plaintiff, and assess his damages in such sum as they "believe, under all the circumstances of this case in evidence, the plaintiff *'ought to recover,'* not exceeding the amount claimed in his complaint," and to the effect that in assessing the damages sustained, they "have a right to consider the character of the injuries, if any, sustained by plaintiff, the pain and suffering, if any, endured and *which will be endured,* if any, as the result of said injuries, if any, sustained by him," etc., were properly given, and contain no error by reason of the parts italicized.

ID.—INSTRUCTION AS TO NEGLIGENCE—EMPLOYMENT OF CHILD CONTRARY TO LAW—NATURE OF DAMAGES.—The court correctly instructed the jury that the employment of a child under the age of twelve years in a manufacturing establishment, contrary to the law of this state (Stats. 1905, p. 11) constituted negligence *per se,* for which the defendant would be responsible for any injury sustained by the child, without fault upon its part. Such instruction, when taken with the other instructions given, cannot be construed as submitting to the jury any question of exemplary damages, but only of compensation for the actual damages suffered by the plaintiff as the result of defendant's negligence.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. George A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

Naphtaly & Freidenrich, for Appellant.

Sullivan & Sullivan, and Theo. J. Roche, for Respondent.

HART, J.—This is an action for damages for personal injuries. The prayer of the complaint demands a judgment for $15,000, and the jury returned a verdict for $7,500. Judgment was thereupon entered in favor of the plaintiff for the sum so awarded.

The defendant presents this appeal from said judgment and from the order denying it a new trial.

The appellant claims to be entitled to a reversal of the judgment and order for the reasons, (1) that the damages assessed by the jury are so excessive as to justify the conclusion that the verdict was reached through passion or preju-

dice; (2) that the court erred to the prejudice of the appellant in the giving of certain instructions.

1. The evidence discloses these facts: The defendant, at the time of the accident through which the plaintiff sustained his injuries, owned and operated a foundry in the city of San Francisco, and was engaged in the manufacture of machines, nuts, bolts, tools and other mechanical appliances. The plaintiff, a lad then under the age of twelve years, was employed to work in said foundry by the defendant in either the latter part of the month of June or the first part of the month of July, 1905. At that time the plaintiff measured about four feet and eight inches in height and weighed approximately eighty pounds. Prior to his employment by the defendant the plaintiff was without any experience with machinery of any character. At first he was placed by Mr. Griffin, a foreman of defendant, in charge of a machine, the operation of which involved no particular danger of accidents to the operator. On this machine he worked for about two weeks, when he was put to the operation of a machine used for the purpose of "squaring off the tops of faucets." This machine consisted, among other contrivances, of a very small cutter, and the plaintiff testified that, in its manipulation, he was not required to place his hands anywhere near the knife or cutter. After working on this machine for little less than a week he was "put to wrapping," at which, with other odd jobs in the nature of errand work around the foundry, he was employed for about three weeks, when he was put to work on the machine, in the operation of which he received the injuries complained of. This machine was used for cutting, squaring and finishing nuts, tools and other mechanical appliances. It contained cutters, circular in form, about two and one-half inches in diameter and were, necessarily, very sharp. The plaintiff testified: "There were two of these cutters on each side, and they were forced together and the material which was to be squared was cut as it run between them; it cut both sides at the same time; those knives were located, I guess, about six inches above the bed of the machine." The machine was run by electricity. There were belts connected with each of the wheels attached to the machine, and they extended up to a wheel where there was a revolving shaft. The power was turned on by means of a

"shifter," which was located above the machine and at a point to the front of the operator from the point at which he stood when operating the machine. The plaintiff was not of sufficient height to operate the machine without a platform upon which to stand, and this platform was placed in front of the machine, it having been built for the special purpose of enabling the plaintiff to operate the machine on which he was at first put to work. The plaintiff further testified: "When I was put to work on this machine, Mr. Griffin showed me how to run the material through. The material that was cut was stuffing nut and fusible plug. They were run in between the knives on a kind of a platform that they screwed them down to. That is the appliance or projection appearing in the middle or center of this machine. Then they were forced into the knives. All that Mr. Griffin said to me at the time he placed me to work on this machine, for the first time, was to show me how to operate it. He said, whenever you are going to cut a screw down on this projection, to be careful and screw it down tight, because he said you would spoil the material if you did not; it would leave the sides crooked and they would not mill straight. That was practically all that was said during that conversation when I was first placed at work upon that machine. . . . Mr. Griffin told me to put all the defective plugs or nuts on the lid or shelf connected with the rear of the machine; he told me not to mill the defective material; I put it over on this shelf or lid; he did not tell me how to put it over there. And then I started to operate the machine; in operating it, I came in contact with defective material which I placed on the lid or shelf just as he told me. I placed it there by reaching over the machine; right over the cutters like that (showing) with my right hand. . . . During the first two days that I was put to work on that machine, I discovered quite often, material which could not be used and which I was instructed not to use. That material I placed upon that lid in the manner which I have indicated by putting my right hand over the knife or cutter. . . . I was never told by Mr. Griffin or anybody else connected with the establishment to get off that platform in front of my machine and go round to the rear of the machine and place the material on the shelf or lid in that manner and then go around to the front again. To do

it in that way would occupy some considerable time. I was never told to do it in that way. The clothes in which I worked was a pair of overalls and a dark shirt; when I went there to be employed by W. T. Garratt I told my parents I was going there to wrap; the shirt I wore while working in that factory was a dark shirt with white stripes. It was calico, I guess. The sleeves were not very loose. The accident happened this way. I had just finished my lunch and went to work on the machine. I was told to fix some stuffing nuts at the side and was working on them for a while when I found a defective nut and reached over the top of the knives to put it on this lid or shelf as I was told to do, and my arm got caught. I don't know whether it was the sleeve or the arm itself; it happened so quickly. The cutters tore into my arm and then I was taken down to the Receiving Hospital, to the Harbor Emergency down near the waterfront.''

With reference to the effect of the injuries he sustained, the plaintiff testified: ''The arm and hand is smaller than the other arm and hand which was not injured. I have no power at all in the thumb or forefinger—no sensation—can't feel anything in those fingers and can't use them at all; can't bend them except as indicated. There is no sensation at all in the middle finger.'' He said that, prior to the accident, he had been ''taking music lessons upon the violin,'' but that since his arm and hand were injured ''it is impossible for me to further manipulate the violin''; that it is with great difficulty that he can now handle a pen so as to write; that in cold weather he still suffers ''terrible pain in the arm.''

The mother of plaintiff saw the injured arm and hand the day following that upon which the accident happened, when the attending physician was dressing the wounds, and she declared that ''the arm was in an awful condition; that the flesh was all chopped away, just like it had been chopped off with a knife or something.'' She said that the boy had been unable to take lessons on the violin after the accident, and that, after some practice, he got so that he could write by holding a pen between his thumb and little finger. For about a year after he was hurt, she continued, he suffered from occasional fainting spells when the weather was cold.

Dr. Stoney, who was called in and attended the plaintiff immediately after the accident occurred, had died before the trial of this action, and Drs. Haber and Buckley, at the request of plaintiff, made an examination of the injured arm and hand and the muscles of that member. Dr. Haber testified, in part, as follows: "When I refer to the arm which I say was slightly smaller, I mean the arm between the shoulder and the elbow. The forearm, between the elbow and the wrist was considerably smaller. The muscles were atrophied and some of them in a degenerated condition. By atrophy, I mean, the muscles due to the injury to the nerve supply[ing] them, degenerates and do not perform the functions that they should. They cannot perform those functions because the nerve supply is shut off, there is a nerve located in the arm; part of the brachial system which supplied the forefinger and the thumb; that nerve originates in the plexus; that is in the brachial plexus. Those are the nerves which originate just above the shoulder in the neck. That nerve supplies the muscles in the upper arm, in the forearm, the muscles of the hand and also the sensation of some parts of the skin. It supplies or controls the muscles which bend the finger or flex the finger—all of the fingers in part and entirely of the index and middle fingers. It supplies some of the muscles of the thumb. . . . From my examination of this arm, and hand and fingers, and from the test that I have made of the hand and fingers, I will state that the nerve has been injured but not entirely destroyed. Some of the muscles supplied by that nerve are active; others are not. From my experience as a doctor, I do not think it will be possible for the boy at any time to recover the use of the thumb and finger. I have observed weakness in that finger and hand. There are other signs of an injury to the nerve and to the artery. Those signs are, the hand has not developed as the other hand is; it is smaller, two of the fingers are shorter and not as large in circumference. . . . I do not think it will ever be possible for plaintiff to perform any manual labor in that arm or hand. I do not think it would be possible for him to play upon the violin with any degree of success with his hand and arm in its present condition."

Dr. Buckley corroborated generally Dr. Haber as to the condition in which the lad's arm, hand and the muscles of

the injured member had been left by the injuries sustained by the accident. He said that it was his opinion that the plaintiff would never be able to use the injured hand again to any advantage; that it would be impossible for him to play on any musical instrument such as a violin; that "the boy is suffering from wasting of the inner side of the forearm, and also suffering from a general defect of the arm." Dr. Buckley said that the atrophied condition of the arm was due to the injury to the whole nerve. This witness declared that "from my experience as a physician and surgeon, the injuries received by plaintiff, as indicated by his present condition, must have caused him great suffering; whenever you have an injury to the nerve, you are sure to have a great deal in the track of that ever afterward, and the slightest cold or changes of temperature are very apt to produce it."

The plaintiff and his mother and father testified that for two years previously to the time he was injured he had been a pupil of a teacher of violin music, and had acquired such proficiency as a performer on that instrument as that he was able to and did, on several occasions, play in public.

The foregoing statement embraces, in substance, all the important facts established by the evidence.

There are, as stated, but two points urged on this appeal. The sufficiency of the evidence to justify a verdict in favor of the plaintiff is not challenged, the only claim with regard to the evidence being, as seen, that the damages awarded by the jury are so excessive as to compel the conclusion that they were given under the influence of passion or prejudice. (Code Civ. Proc., sec. 657, subd. 5.)

We see nothing in the record from which this court would be warranted in declaring that the jury, in the rendition of their verdict and in arriving at a conclusion as to the amount at which they assessed the damages, were influenced by any other motive than a conscientious consideration of the facts which were adduced before them. The testimony discloses and establishes beyond all peradventure that the boy was so seriously injured as to permanently impair his ability to pursue during the balance of his life an occupation requiring the exercise of his full, natural physical power; that for two years after the accident he suffered from the effect of his injuries, and that his condition at the time of the

trial, which took place over two years after the accident, was such as to justify Drs. Haber and Buckley in testifying, by way of a professional prognosis of his injuries, that, during the remainder of his life, he would in all probability continue to suffer pain from said injuries. The fact that the plaintiff will forever be prevented, by reason of the impairment, or, in truth, complete destruction, of his ability to pursue the musical studies on lines for which, evidently, he possesses peculiar talent, is a matter of no little importance, and was a proper item for the consideration of the jury in the fixing of such compensation for the great loss he has sustained through the negligence of the defendant as would be fair and just. As a result of his injuries, his right arm and hand have grown smaller from atrophy than his left arm and hand, and the doctors hold out no hope that the difficulty can ever be remedied or corrected in any perceptible degree. The necessary result is that the plaintiff is not only seriously handicapped permanently in the great struggle for existence, but a laudable ambition to acquire proficiency in the particular musical line to which his genius in that respect directed him is absolutely destroyed and thwarted when he is yet far removed from the threshold of man's estate. As is well suggested by counsel for the respondent, in replying to cases cited by appellant where damages were held to be excessive for the loss of two fingers or some like injury, "the injuries here complained of were vastly more serious than would have resulted from a mere fracture of the arm or a fracture or amputation of the fingers."

No reviewing court has any right to invade the province of a jury in cases of the nature of the one here by cutting down or diminishing the amount of damages awarded unless it clearly and distinctly appears from the face of the record evidence itself that the sum assessed as the compensation for the injuries sustained is so far beyond a reasonable and just admeasurement of damages, under all the circumstances appearing, as to imperatively force upon the court the fact that such damages could not have been given except under the influence of passion or prejudice.

All the cases say, as is said in *Clare* v. *Sac. Elec. etc. Co.,* 122 Cal. 506, [55 Pac. 327], that "in cases of this character, there

11 Cal. App.—10

can be no direct evidence of the amount of damage sustained, or the amount of money which will be a compensation for the injury, but it is sufficient to show to the jury the extent of the injury, and the amount of their verdict thereon is to be determined by the exercise of an intelligent discretion; and, unless the amount of the verdict is such as to indicate that it was given under passion or prejudice, it will be sustained." In other words, as is well said in Graham & Waterman on New Trials: "The court may set aside a verdict as excessive, in a proper case, where it appears that the amount could only have been arrived at through passion or prejudice. But it cannot, on the mere opinion, judgment or feeling of the judges, fix the sum the plaintiff ought to have. It is no part of its duty to assess damages in cases of this kind. This duty the law confers upon juries. Nor is this court any better qualified than a jury to determine such amount. Attainments in the law do not aid at all in the discharge of such a duty; there is no reason to suppose the judges possess such experience in matters of this kind, or are so peculiarly endowed by nature, that their judgments upon such questions are more unerring than those of juries." Again, the same authors, at page 451 of their work, say: "It is clear that the reason for holding the parties so tenaciously to the damages found by the jury in personal torts is, that in cases of this class there is no scale by which the damages are to be graduated with certainty. They admit of no other test than the intelligence of a jury, governed by a sense of justice. It is, indeed, one of the principal causes in which the trial by jury has originated. From the prolific fountain of litigation numerous cases must daily spring up, calling for adjudication for alleged injuries, accompanied with facts and circumstances affording no definite standard by which these alleged wrongs can be measured, and which, from the necessity of the case, must be judged of and appreciated by the view that may be taken of them by impartial men. To the jury, therefore, as a favorite and almost sacred tribunal, is committed by unanimous consent the exclusive task of examining those facts and circumstances, and valuing the injury and awarding compensation in the shape of damages. The law that confers on them this power and exacts of them the performance of the solemn trust, favors the presumption that

they are actuated by pure motives. It therefore makes every allowance for different dispositions, capacities, views and even frailties in the examination of heterogeneous matters of fact where no criterion can be supplied; and it is not until the result of the deliberations of the jury appears in a form calculated to shock the understanding and impress no dubious conviction of their prejudice and passion that courts have found themselves compelled to interpose.'' (See, also, *Bonneau* v. *North Shore R. R. Co.*, 152 Cal. 406, [125 Am. St. Rep. 68, 93 Pac. 106]; *Lee* v. *Southern Pacific R. R. Co.*, 101 Cal. 118, [35 Pac. 572]; *Wilson* v. *Fitch,* 41 Cal. 368; *Wheaton* v. *N. B. & R. Co.*, 36 Cal. 590; *Aldrich* v. *Palmer,* 24 Cal. 513.)

The records in the cases referred to and relied upon by the appellant were no doubt such as to justify the appeal courts in reducing the amount of damages returned by the juries upon the facts established therein, but we perceive nothing in said cases which requires or would justify the cutting down of the damages here, awarded upon evidence disclosing a much different state of facts from that upon which the higher courts felt constrained in those cases to hold the damages to be so excessive as ''to shock the understanding and impress no dubious conviction'' that they were the result of passion or prejudice. As was said by the late learned Justice McFarland, in the case of *Morgan* v. *Southern Pacific Co.*, 91 Cal. 501, 508, 509, [29 Am. St. Rep. 143, 30 Pac. 601, 602]: ''Cases are cited where verdicts for less than the amount awarded in the case at bar have been set aside; but there are many cases where verdicts for larger amounts have been allowed to stand. Two cases exactly alike are not to be found.'' See the following cases where the appeal courts refused to interfere with the damages awarded for the loss of limbs, either one or both: *Galveston Ry. Co.* v. *Abbey,* 29 Tex. Civ. App. 211, [68 S. W. 293]; *Kalfur* v. *Broadway Ferry,* 34 App. Div. 267, [54 N. Y. Supp. 503]; *Williamson* v. *Brooklyn Heights Ry. Co.*, 53 App. Div. 399, [65 N. Y. Supp. 1054]; *Robinson* v. *Central Pacific R. R.*, 48 Cal. 410 ($10,000 for loss of an arm); *Union Pacific Ry. Co.* v. *Connolly,* 77 Neb. 254, [109 N. W. 378]. In *Stewart* v. *Long Island Ry. Co.*, 54 App. Div. 623, [66 N. Y. Supp. 436], where the plaintiff obtained a verdict for $18,000 for an

injury to his arm by which the member was permanently disabled, the court, refusing to disturb the verdict, says: "Further, I give much weight to the fact that the learned and acute trial justice refused to disturb the verdict." (See, to same effect, *Harrison* v. *Sutter St. Ry. Co.*, 116 Cal. 156, [47 Pac. 1019]; *Doolin* v. *Omnibus Cable Co.*, 125 Cal. 141, [57 Pac. 774]; *Reeve* v. *Colusa Gas Co.*, 152 Cal. 99, [92 Pac. 89]; *Smith* v. *Whittier*, 95 Cal. 279, [30 Pac. 529].)

In *Reeve* v. *Colusa Gas & Elec. Co.*, 152 Cal. 110, [92 Pac. 94], Mr. Justice Shaw, who wrote the opinion, very aptly says: "It is impossible adequately to describe the suffering and misery—past, present and future—inflicted upon the plaintiff as a consequence of the injury. The verdict is large, the amount of damage was a question for the jury, subject to the supervision and correction of the trial court, and having been passed by the latter without disapproval, it is not for us to say, under the circumstances, that it is excessive." (See *Perkins* v. *Sunset Tel. & Tel. Co.*, 155 Cal. 712, [103 Pac. 190.])

We think that common experience justifies the observation that either the loss of, or an injury to, an arm in such manner as to permanently disable it, thus rendering it practically useless, to one compelled to earn a livelihood by manual labor, is worse and of infinitely greater disadvantage to the person so injured than would be the loss of a leg. In this case, if the testimony of the witnesses for the plaintiff be true, and it must, in view of the verdict, be so accepted by this court, the consequence of the injury inflicted upon the plaintiff by the defendant's negligence is, as we have before said, to permanently incapacitate him, to a great extent, for the performance of manual labor or for the exercise of any other employment in which the full normal power of both arms and hands is required. And, as the New York court says, in *Vredenburgh* v. *New York Cen. & H. R. R. Co.*, 58 Hun, 607, [12 N. Y. Supp. 18], where the plaintiff was given damages in the sum of $6,500 for an injury to her right arm, so it is true here: "If the jury believed the testimony introduced by the plaintiff respecting the extent and permanency of her injuries, we can very well see how the verdict was made as it was," the judgment therein being affirmed.

2. The instructions given by the court which it is claimed misstate the rules by which the jury were authorized to be

guided in considering the evidence and assessing the damages read as follows:

"If you believe from the evidence that plaintiff sustained the injuries complained of in his complaint, as amended, through the carelessness and negligence of the defendant, without negligence on his part, then you should find for the plaintiff, Donald Scally, and assess his damages in such sum as you believe, under all the circumstances of this case in evidence, the plaintiff *ought to recover,* not exceeding the amount claimed in his complaint, as amended, to wit, $15,000."

"If you believe from the evidence that the plaintiff, Donald Scally, is entitled to a verdict against said defendant, you must assess the amount of damages at a sum not to exceed the amount prayed for in his complaint, as amended, and in so doing, you have a right to consider the character of the injuries, if any, sustained by plaintiff, the pain and suffering, if any, endured and *which will be endured,* if any, as the result of said injuries, if any, sustained by him, the effect of such injuries, if any, upon said plaintiff, the permanent character of said injuries, if any, if such injuries are permanent and what, before the injuries complained of, was the health and physical condition of the plaintiff. From all those elements, you will resolve what amount will fairly compensate the plaintiff for the injuries sustained by him, if any, provided you find in favor of the plaintiff."

Counsel for the appellant call our attention to several California cases in which it is held that instructions, phrased in language in some respects similar to that of the instructions complained of here, were erroneous. In illustration of the pertinency of this contention, and for the purpose of showing the similarity of the two instructions, counsel, in their brief, parallel certain language of an instruction given in the case of *Trabing* v. *Cal. Nav. Co.,* 121 Cal. 143, [53 Pac. 646], which they intimate was condemned by the supreme court as not containing a correct statement of the law, with the italicized portion of the first quoted of the foregoing instructions given in the present case. In the case cited, the instruction, among other declarations, contained the following: " . . . then I charge you, your verdict will be in favor of plaintiff for such damages as under all the circumstances of the case disclosed by the evidence *appearing* to be just, not exceed-

ing,'' etc. · But the court in that case does not, in its criticism of said instruction, go to the extent which the intimation of counsel would indicate. In fact, the court approved the instruction as involving a correct declaration of the law in abstract form. What the court did hold, however, was, that in that particular case, where there was an entire absence of any ground upon which the infliction of punitive or exemplary damages, claimed by the plaintiff, could be justified, there having been no evidence introduced showing that the corporation defendant itself committed the tort, and none showing that it ratified the act of its agent resulting in the tort, the instruction was too general and, therefore, misleading. The court said: ''The instruction would apply to almost any conceivable case whether the action was against the principal or the agent who actually committed the tort, and whether the facts did or did not justify exemplary damages.''

If the trial court in that case had clearly instructed the jury that, under the facts as established by the evidence, they should not consider the question of exemplary damages, as such question was not involved there, the instruction which appellant declares that the court condemned would have been proper in that case, for then, from the whole charge, it would clearly appear that the jury were properly restricted by the court in the matter of the assessment of damages to the consideration of the single question, what amount, ''under all the circumstances of the case disclosed by the evidence,'' *appeared* to constitute just *compensation* for the damages sustained.

In the case at bar, no such negligence was imputed to the defendant as would warrant the infliction of a punishment by way of damages in excess of the amount which would, in the judgment of the jury, constitute just compensatory damages. Nor was any claim made by the plaintiff that punitive or exemplary damages should be imposed. Besides, the court in plain and perspicuous language instructed the jury that if the negligence of the defendant was the proximate cause of the injuries, if any, sustained by plaintiff, their verdict must be in favor of plaintiff ''for such *damages* as you shall find from the evidence he has *sustained,* not exceeding the amount claimed in plaintiff's complaint.'' Thus it clearly appears that the court distinctly told the jury that they were, in case

they found the plaintiff's injuries were proximately due to defendant's negligence, to return only such amount as would in the estimation of the jury adequately compensate plaintiff for whatever *damages* he had thus *sustained,* and if the language of the instruction is susceptible of being understood at all it must necessarily be understood as expressly limiting the jury to the consideration of the proposition of what, if any, actual damages the plaintiff had suffered by reason of the accident, or, in other words, as excluding from consideration by the jury any question of ''damages'' in the nature of punishment. The fact is, in strictness, it would seem, in cases of personal tort, that characterizing as ''damages'' the sum which may be allowed in certain cases in excess of that which may be awarded as compensation for the damages actually sustained is rather misleading, if not involving altogether a misnomer, for such ''damages,'' so called, amount only to a punishment or a fine which the law says ought to be imposed in cases where the negligence is the result of wanton carelessness, such fine, somewhat in analogy to the action of *qui tam,* to go to the party who has been injured and brought the suit. As applied to the defendant, the phrase ''exemplary damages'' is appropriate enough; but, as to the injured party it could not be said that he could *sustain* ''exemplary damages.'' It would, obviously, be absurd to so say. He could, manifestly, *sustain* such damages only as amounted to an actual loss to him; and, when the court explained that the plaintiff was entitled to such damages as the jury might find from the evidence that he had *sustained,* it must have thus been made clear to the jury that what the court meant, when it subsequently told them that they should ''assess the damages in such sum as they *believe from the circumstances of this case in evidence* the plaintiff *ought to recover,''* was that they were at liberty to allow actual damages only. As so understood, the instruction correctly states the law and conforms to the rule as declared in section 3333 of the Civil Code, which reads: ''For the breach of an obligation not arising upon contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all detriment proximately caused thereby, whether it could have been anticipated or not.''

But counsel for appellant contend that the instructions upon the subject of the employment by a person, firm or corporation of a child under the age of twelve years in manufacturing establishments, etc., contrary to the law of this state (Stats. 1905, p. 11) of necessity submitted to the jury the question of exemplary damages, and that, therefore, the instruction of which we are speaking, considered in the light of the former, was erroneous, in that, necessarily, among the "circumstances" which the jury were therein told that they could consider in fixing the damages was the fact, if they found it to be a fact, that the plaintiff in this case, when employed by the defendant, was under the age of twelve years. The instructions with regard to the employment of a child under the age of twelve years, in violation of the statute, in substance declare that the proximate cause of an injury sustained by such child while performing the duties required by his employment in one of the establishments mentioned by the statute, such injury having been received through no fault of the child, would be the negligence of the defendant, or, in other words, such negligence would be negligence *per se.* This is a correct statement of the law, and when considered with the rest of the charge of the court, cannot be construed to mean that the question of punitive damages was thus opened up for investigation and determination by the jury.

The instruction given by the trial court and condemned by the supreme court in *Fries v. American Lead Pencil Co.,* 141 Cal. 613, [75 Pac. 165], is radically different from the one assailed here. It reads in part: ". . . then it would be your duty to give the child such amount of damages as you *feel* it is entitled to, not exceeding the amount prayed for in the complaint." In its criticism of this instruction, the supreme court says: "To say that the jury may award such damages as they *feel* the plaintiff is entitled to is the equivalent to telling them that they may give play to their emotions of sympathy for the injured child, emotions which, eminently proper in themselves, can have no just place in fixing an award of actual damage." In the instruction in the case at bar, the court said to the jury, as we have seen, that the negligence of the defendant being shown, and no fault of the plaintiff appearing, they should "assess the damages in such sum as you *believe, under all the circumstances of this case*

*in evidence,* the plaintiff ought to recover, not exceeding,"
etc.  In other words, the jury were not here told, as in the
Fries case, that they could give expression or full vent to
their *feelings,* which in effect meant their sympathies, or at
least could easily be so interpreted, in fixing the damages, but
that they were to arrive at a sum which they believed, from
all the circumstances in evidence, the plaintiff ought to re-
ceive as a fair and just compensation for the loss or damages
sustained by him by reason of the injuries received through
the negligence of the defendant.

The specific objection to the second instruction complained
of is that the court, in setting forth the elements which the
jury should take into account in assessing the damages, de-
clared that, in addition to the immediate effect of the injuries
sustained by plaintiff, they should consider "the pain and
suffering which *will be* endured, if any, as the result of said
injuries," etc.  The vice of the instruction, it is insisted,
is involved in that portion thereof in which the jury were
thus told that any pain and suffering, if any, which the plain-
tiff *will endure* in the future as the result of his injuries
constitute a proper element to be considered in fixing the
damages, the argument being that this language authorized
the jury to fix the damages, so far as the future effect of
plaintiff's injuries was concerned, not alone upon what the
evidence might show, with reasonable certainty, would be his
future suffering, etc., but also upon what the jury might, by
means of mere speculation or conjecture conclude that the
extent of his future pain and suffering might be.  We do not
so understand the language of the instruction.  That plain-
tiff was entitled not only to such damages as the evidence
established that he had suffered, but also to such further dam-
ages as the evidence disclosed that he would suffer in the
future, is a proposition no one will dispute.  If, therefore,
the evidence here disclosed with reasonable certainty the ex-
tent of the suffering, if any, plaintiff would endure in the
future as the result of his injuries, the plain duty of the jury
was to consider such evidence in fixing the amount of the
damages.  And all that the instruction· in effect declares is
that, if the evidence was such as to enable them to ascertain
and determine what the future pain and suffering of the
plaintiff *will be,* then they should consider the same as one

of the basic elements upon which they should assess the damages.

The instruction here is not like that condemned in the case of *Melone* v. *Sierra Ry. Co.,* 151 Cal. 113, [91 Pac. 522], et seq. In that case the trial court instructed the jury that an element of damages "was the pain and anxiety that he suffered or *may* suffer by reason of his injuries." This instruction was declared to be erroneous, because the auxiliary verb as there employed necessarily expressed the idea that the jury could indulge in speculation or conjecture as to whether and to what extent the complaining party would suffer in the future as the result of his injuries. Counsel for the appellant see no distinction between the two instructions, contending that the words "may" and "will" are used interchangeably and are commonly so understood. Colloquially these auxiliary verbs may be so used and understood, but in grammatical construction they perform entirely distinct offices, and, therefore, convey essentially different meanings, the one importing a mere possibility or vague or indefinite speculation as to the existence of some fact or thing, the other the unqualified or unconditional existence of some fact or thing; or, in other words, the one meaning an existence in possibility and the other an existence in actuality. A sick patient, for illustration, would much prefer to have his physician say, "You *will* recover," to the expression of the doubtful prognosis, "You *may* recover." Nor can it be assumed that the word "will," as employed in the instruction under review, was so used by the court and understood by the jury as an auxiliary verb in any other than its true grammatical sense. The instruction here and the one in the Melone case are, therefore, totally dissimilar, and obviously, as stated, convey entirely different meanings.

The cause seems to have been carefully and fairly tried, and, as before declared, the evidence abundantly supports the verdict and the amount of damages returned. In fact, when the youth of the plaintiff and the dangerous machine upon which he was put to work without previous experience in its manipulation, and without having been specially warned with regard to the danger involved in its operation, are considered, we think, in view of the seriousness and permanency

of the effect of plaintiff's injuries, the defendant was very considerately and liberally treated by the jury.

The negligence of the defendant is not disputed on this appeal, nor is there any claim here of contributory negligence on the part of the plaintiff.

No reason has been disclosed why the judgment and order appealed from should not be allowed to stand.

They are, therefore, for the reasons herein given, affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 15, 1909.