*760
 
 Opinion
 

 ORTEGA, Acting P. J.
 

 In this personal injury lawsuit arising from an automobile accident, the jury awarded the plaintiff substantial general damages, which was not in itself remarkable. What was unusual, however, was plaintiff’s expert economist’s testimony on “hedonic”
 
 [1]
 
 damages, or damages to compensate for the loss of enjoyment of life. The expert told the jury the baseline value of an average person’s remaining 44-year life expectancy is $2.3 million. He also explained that after adjusting the baseline value to account for the plaintiff’s expected lifespan, the jury could calculate the plaintiff’s hedonic damages by multiplying the percentage of the plaintiff’s disability by the adjusted baseline figure. The admissibility of such testimony appears to be a question of first impression in California.
 
 [2]
 

 We conclude the expert’s testimony on hedonic damages was inadmissible as a matter of law and its admission was prejudicial. We reverse the judgment and remand for a new trial on damages.
 

 Factual and Procedural Background
 

 On June 29, 1994, plaintiff Shereen Loth was on a business trip driving north on Interstate 5. Plaintiff’s small car was struck by a 24-wheel tractor-trailer rig owned by defendant Truck-A-Way Corporation. The collision occurred as plaintiff’s car, which was in the slow lane, was passing on the truck’s right. The truck made an unsafe lane change into plaintiff’s lane, and its front end hit plaintiff’s car’s left rear. Plaintiff’s car spun in front of the truck and was pushed sideways across three lanes of traffic. Plaintiff’s car
 
 *761
 
 eventually separated from the truck, but was struck by another vehicle before it stopped on the shoulder, facing the wrong way.
 

 Plaintiff walked away from the accident but her car was seriously damaged. She continued her trip in a rental car, but she had suffered a concussion, was disoriented, and was unable to handle her business affairs. (Plaintiff, a design school graduate, owns a small but growing business that manufactures and markets lingerie throughout California and in Las Vegas.) Plaintiff cut short her business trip and flew home.
 

 Two days after the accident, plaintiff went to her doctor complaining of headaches, low back pain, and a stiff neck. Between July 1994 and March 1995, plaintiff saw five other doctors including a neurologist, a psychiatrist, and an orthopedic surgeon. She had disabling neck pain, headaches, severe low back pain, groin pain, and shooting pains down her legs. She received physical therapy which lessened her headaches, neck pain, and upper back pain, but failed to improve her low back pain, groin pain, and shooting pains down her left leg. A soft tissue injury specialist gave her cortisone shots in the lower back and sacroiliac joint, but she felt no lasting relief. She had six chiropractic sessions that were of no help. According to plaintiff’s medical experts, she has exhausted her treatment options other than taking pain medications with dangerous potential side effects.
 

 Plaintiff sued Truck-A-Way and its employee driver for personal injuries, property damage, and lost earnings. Defendants conceded liability at trial, and the only issue for the jury was damages.
 

 Plaintiff asked the jury for $208,479 in special damages, comprised of medical damages (past and future) of $27,635, temporary lost earnings of $147,675,
 
 [3]
 
 and property damage and miscellaneous expenses of $3,507. (Those figures do not total $208,479, but that is what the jury was told both orally and in writing.)
 

 As for pain and suffering, plaintiff asked for an unspecified amount of damages, including compensation for loss of enjoyment of life. Plaintiff, who was 27 when the accident occurred, was a star high school varsity athlete in volleyball, softball, and basketball. Before the accident, she worked 10- to 11-hour days (including a night shift as a cocktail waitress), played softball and volleyball 3 nights a week, and exercised at the gym every day. After the accident, she could not sit at a sewing machine for longer than an hour without pain, could not function as a cocktail waitress,
 
 *762
 
 could not play organized sports, and could no longer water or snow ski, jog, or golf. Her social life, which had previously revolved around her athletic activities, was severely impaired. Driving a car now causes her jaw to hurt. To prevent her jaw from clenching, she must drive with her mouth agape. She has constant lower back pain that increases with activity and sometimes shoots down her leg. She had hoped to get married and have children, but her condition has made her fearful of having children and her “sexual spontaneity is gone.”
 

 Over defendants’ objection,
 
 [4]
 
 plaintiff’s expert economist Stanley V. Smith testified he had computed the basic economic value of life (apart from one’s earnings from employment). Smith relied upon three types of studies of: (1) the amount society is willing to pay
 
 [5]
 
 per capita on protective devices such as seat belts, smoke detectors, etc., (2) the risk premiums employers pay to induce workers to perform hazardous jobs, and (3) the cost/benefit analyses of federally mandated safety projects and programs. Based on those studies, Smith calculated the value of an average person’s remaining 44-year life expectancy at $2.3 million, which he described as a baseline figure. Smith adjusted the baseline figure to account for plaintiff’s longer than average remaining life expectancy of 53 years. He multiplied the adjusted baseline figure by various percentages reflecting plaintiff’s possible degrees of disability to calculate various possible hedonic damage awards. For example, Smith told the jury that in plaintiff’s case, a 33 percent loss of enjoyment would be worth $1,684,000, a 10 percent loss of enjoyment would be worth $510,000, and a 5 percent loss of enjoyment would be worth $255,000. Smith gave the jury a table to assist it in making its mathematical calculations.
 

 Defendants, having failed to prevail on their objections to Smith’s testimony, offered no expert testimony to refute Smith’s assertions.
 

 In closing argument, plaintiff’s counsel specifically referred to Smith’s testimony, and pointed out the absence of conflicting expert testimony on the
 
 *763
 
 formula for computing hedonic damages. Plaintiff’s counsel stated: “Now I want you to compare the experts. Stan Smith testified. He wrote the book literally on this kind of damages. He’s tops in his field. There’s been no contradiction of anything that he said.”
 

 Defendants’ closing argument urged the jury to disregard plaintiff’s claim of a lower back injury. Defense counsel conceded plaintiff had incurred a soft tissue injury to the neck and a concussion, but argued her other injuries were not related to the accident. As for pain and suffering damages, defense counsel argued that the jury needed no expert testimony to calculate an award. Counsel pointed out Smith’s $2.3 million baseline figure did not take into account “any unique personalities, likes, interests of any one of us. I think each one of us is a . . . distinct individual, and I think it’s almost sacrilegious or almost impossible to place value on human life. That’s going to be a tough job for you, and that’s something that you are going to have to decide in this matter.” Counsel urged the jury to ignore Smith’s testimony, which he characterized as “just too speculative[.]”
 

 The jury returned a general verdict for plaintiff for $890,000. After the trial court denied defendants’ motion for new trial or remittitur, defendants appealed from the judgment.
 

 Contentions on Appeal
 

 Defendants contend Smith’s testimony on hedonic damages was inadmissible and the amount of the judgment was unsupported by the record.
 

 Discussion
 

 In California, a pain and suffering award may include compensation for the plaintiff’s loss of enjoyment of life. Loss of enjoyment of life, however, is only one component of a general damage award for pain and suffering. It is not calculated as a separate award.
 

 “California case law recognizes, as one component of general damage, physical impairment which limits the plaintiff’s capacity to share in the amenities of life.
 
 (Henninger
 
 v.
 
 Southern Pacific Co.
 
 [(1967)] 250 Cal.App.2d 872, 883 . . . (loss of both legs);
 
 Purdy
 
 v.
 
 Smith and Co.
 
 [(1939)] 34 Cal.App.2d 656, 658 . . . (impairment of taste and smell);
 
 Scally
 
 v.
 
 W. T. Garratt & Co.
 
 [(1909)] 11 Cal.App. 138, 145 .. . (loss of ability to pursue musical studies) . . . .) The California decisions rarely employ the ‘enjoyment of life’ rubric, yet achieve a result consistent with it. No California rule restricts a plaintiff’s attorney from arguing this element to
 
 *764
 
 a jury. Damage for mental suffering supplies an analogue. [Citation.] A majority of American jurisdictions recognize the compensability of loss of enjoyment of life, some as a component of the pain and suffering award, others as a distinct item of damage. [Citations.]”
 
 (Huff v. Tracy, supra,
 
 57 Cal.App.3d at p. 943.)
 
 [6]
 

 There is “[n]o definite standard or method of calculation . . . prescribed by law by which to fix reasonable compensation for pain and suffering.” (BAJI No. 14.13 (8th ed. 1994), original brackets omitted.) As our Supreme Court stated, “One of the most difficult tasks imposed upon a jury in deciding a case involving personal injuries is to determine the amount of money the plaintiff is to be awarded as compensation for pain and suffering. No method is available to the jury by which it can objectively evaluate such damages, and no witness may express his subjective opinion on the matter. [Citation.] In a very real sense, the jury is asked to evaluate in terms of money a detriment for which monetary compensation cannot be ascertained with any demonstrable accuracy. As one writer on the subject has said, ‘Translating pain and anguish into dollars can, at best, be only an arbitrary allowance, and not a process of measurement, and consequently the judge can, in his instructions, give the jury no standard to go by; he can only tell them to allow such amount as in their discretion they may consider reasonable. . . . The chief reliance for reaching reasonable results in attempting to value suffering in terms of money must be the restraint and common sense of the jury. . . .’ (McCormick on Damages, § 88, pp. 318-319.)”
 
 (Beagle
 
 v.
 
 Vasold
 
 (1966) 65 Cal.2d 166, 172 [53 Cal.Rptr. 129, 417 P.2d 673].)
 

 The jury must impartially determine pain and suffering damages based upon evidence specific to the plaintiff, as opposed to statistical data concerning the public at large. The only person whose pain and suffering is relevant
 
 *765
 
 in calculating a general damage award is the plaintiff. How others would feel if placed in the plaintiff’s position is irrelevant.
 
 [7]
 
 It is improper, for example, for an attorney to ask jurors how much “they would ‘charge’ to undergo equivalent pain and suffering.”
 
 (Beagle
 
 v.
 
 Vasold, supra,
 
 65 Cal.2d at p. 182, fn. 11.) “This so-called ‘golden rule’ argument [citation] is impermissible. [Citations.]”
 
 (Brokopp
 
 v.
 
 Ford Motor Co.
 
 (1977) 71 Cal.App.3d 841, 860 [139 Cal.Rptr. 888, 93 A.L.R.3d 537].)
 
 [8]
 

 “The appeal to a juror to exercise his subjective judgment rather than an impartial judgment predicated on the evidence cannot be condoned. It tends to denigrate the jurors’ oath to well and truly try the issue and render a true verdict according to the evidence. (Code Civ. Proc., § 604.) Moreover, it in effect asks each juror to become a personal partisan advocate for the injured party, rather than an unbiased and unprejudiced weigher of the evidence. Finally, it may tend to induce each juror to consider a higher figure than he otherwise might to avoid being considered self-abasing.”
 
 (Neumann
 
 v.
 
 Bishop
 
 (1976) 59 Cal.App.3d 451, 484-485 [130 Cal.Rptr. 786]; see also
 
 Sabella
 
 v.
 
 Southern Pac. Co.
 
 (1969) 70 Cal.2d 311, 319-320 [74 Cal.Rptr. 534, 449 P.2d 750];
 
 Zibbell
 
 v.
 
 Southern Pacific Co.
 
 (1911) 160 Cal. 237, 255 [116 P. 513].)
 

 In this case, plaintiff did not make an impermissible “golden rule” argument, but she did something similar. She asked the jury to accept $2.3 million as the baseline value of life and to give her a percentage of that figure (adjusted for her age) as hedonic damages. The baseline figure, however, is not based upon an analysis of any particular individual’s life. It is based upon benchmark figures such as the amount society spends per capita on selected safety devices, or the amount employers pay to induce workers to perform high-risk jobs. We perceive no meaningful relationship between those arbitrarily selected benchmark spending figures and the value of an individual person’s life. Moreover, our Supreme Court has rejected the notion that pain and suffering damages may be computed by some
 
 *766
 
 mathematical formula.
 
 (Beagle
 
 v.
 
 Vasold, supra,
 
 65 Cal.2d at p. 172.) Smith’s hedonic damages formula, however, purports to do just that.
 

 Defendants objected to Smith’s testimony on several grounds.
 
 [9]
 
 One objection was based on the prohibition against separately instructing the jury on general damages for pain and suffering and damages for loss of enjoyment of life
 
 (Huff v. Tracy, supra,
 
 57 Cal.App.3d at pp. 943-944;
 
 Akers
 
 v.
 
 Kelley Co.
 
 (1985) 173 Cal.App.3d 633, 654-655 [219 Cal.Rptr. 513], disapproved on another ground in
 
 People
 
 v.
 
 Nesler
 
 (1997) 16 Cal.4th 561, 582, fn. 5 [66 Cal.Rptr.2d 454, 941 P.2d 87]).
 
 [10]
 
 Separate instructions on pain and suffering and loss of enjoyment of life are prohibited because they could mislead a jury to award double damages for the same injury. Defendants argued below that Smith’s testimony was inadmissible as a matter of law because of its potential for misleading the jury to award double damages. We find the objection was valid and we conclude, as a matter of law, Smith’s testimony should have been excluded on that ground.
 

 Our conclusion is consistent with that of other courts. “ ‘One of the strongest arguments that has been advanced as a reason for not recognizing loss of enjoyment of life as a separate category of damages is that it duplicates or overlaps other categories of damages, such as permanent disability or pain and suffering.’
 
 [Leiker
 
 v.
 
 Gafford
 
 (1989) 245 Kan. 325,
 
 *767
 
 339 [778 P.2d 823, 834], disapproved on another ground in
 
 Martindale
 
 v.
 
 Tenny
 
 (1992) 250 Kan. 621, 628-629 [829 P.2d 561, 566]]. See, generally, Hermes, Loss of Enjoyment of Life—Duplication of Damages Versus Full Compensation (1987), 63 N.D.L.Rev. 561; Annotation, Loss of Enjoyment of Life as a Distinct Element or Factor in Awarding Damages for Bodily Injury (1984), 34 A.L.R. 4th 293; Comment, Loss of Enjoyment of Life as a Separate Element of Damages (1981), 12 Pac.L.J. 965.”
 
 (Fantozzi
 
 v.
 
 Sandusky Cement Products Co.
 
 (1992) 64 Ohio St.3d 601, 613 [597 N.E.2d 474, 483].)
 

 In addition, Smith’s testimony should have been excluded for another reason. Defendants also objected on the ground that the method of computing hedonic damages is not a matter for which expert testimony is admissible under Evidence Code section 801. That objection was also sound.
 

 A plaintiff’s loss of enjoyment of life is not “a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact[.]” (Evid. Code, § 801, subd. (a).)
 
 [11]
 
 No amount of expert testimony on the value of life could possibly help a jury decide that difficult question. A life is not a stock, car, home, or other such item bought and sold in some marketplace.
 

 Smith’s impersonal method of valuing life assumes that for the most part, all lives have the same basic value. That has democratic appeal, but Smith used no democratic processes in reaching that conclusion or selecting which benchmark figures to consider in setting the baseline figure. There is no statute Smith could have turned to for guidance. Our Legislature has not decreed that all injured plaintiffs of the same age and with the same degree of disability should recover the same hedonic damages; nor has it assigned set values in tort cases for the loss of an eye, ear, limb, or life. Moreover, our judicial law prohibits trial counsel from referring to the amounts of jury verdicts in other cases. (See
 
 Salgo
 
 v.
 
 Leland Stanford etc. Bd. Trustees
 
 (1957) 154 Cal.App.2d 560, 579 [317 P.2d 170]; Annot., Propriety and Prejudicial Effect of Reference by Counsel in Civil Case to Amount of Verdict in Similar Cases (1967) 15 A.L.R.3d 1144.) Because counsel may not ask the jury to give the same amount of damages as in another case, it would be inconsistent to permit an expert witness to do so.
 

 
 *768
 
 The figures Smith included in his baseline calculation have nothing to do with this particular plaintiff’s injuries, condition, hobbies, skills, or other factors relevant to her loss of enjoyment of life. The studies Smith used may help explain how much consumers will pay for safer products, or how much society should pay for government-mandated safety programs, but they shed no light on how to value this particular plaintiff’s pain and suffering following the automobile accident. It is speculative, at best, to say the amount society is willing to spend on seat belts or air bags has any relationship to the intrinsic value of a person’s life or the value of an injured plaintiff’s pain and suffering. By urging the jury to rely upon a baseline value supported by factors having nothing to do with this plaintiff’s individual condition, Smith’s testimony created the possibility of a runaway jury verdict.
 
 [12]
 

 Our present system of requiring the jury to determine, without the benefit of a mathematical formula, the amount of a general damages award is not without its faults. But unless and until the Legislature devises a method for computing pain and suffering damages, a plaintiff may not supply, through expert testimony or otherwise, her own formula for computing such damages. Just as no judge may give the jury a standard for determining pain and suffering damages (see
 
 Beagle
 
 v.
 
 Vasold, supra,
 
 65 Cal.2d at p. 172), no expert may supply a formula for computing the value of life and, by extrapolation, the value of the loss of enjoyment of life. That calculation, at present, must be left to the sound discretion of the jury.
 

 We note other jurisdictions have also excluded Smith’s hedonic damages expert testimony. (See
 
 Mercado
 
 v.
 
 Ahmed
 
 (7th Cir. 1992) 974 F.2d 863, 868-871;
 
 Ayers
 
 v.
 
 Robinson
 
 (N.D.Ill. 1995) 887 F.Supp. 1049, 1051-1066;
 
 Fetzer
 
 v.
 
 Wood
 
 (1991) 211 Ill.App.3d 70 [155 Ill.Dec. 626, 569 N.E.2d 1237,1244-1247];
 
 Longman v. Allstate Ins. Co.
 
 (La.Ct.App. 1994) 635 So.2d 343, 353-355 [citing
 
 Foster
 
 v.
 
 Trafalger House Oil & Gas
 
 (La.Ct.App. 1992) 603 So.2d 284, 285-286];
 
 Anderson/Couvillon
 
 v.
 
 Neb. Dept. of Soc. Serv.
 
 (1995) 248 Neb. 651, 664-671 [538 N.W.2d 732, 741-745];
 
 Talle
 
 v.
 
 Nebraska Dept. of Social Serv.
 
 (1995) 249 Neb. 20, 25-26 [541 N.W.2d 30, 34-35].)
 
 Sherrod
 
 v.
 
 Berry
 
 (7th Cir. 1987) 827 F.2d 195, upon which plaintiff relies, was implicitly limited or overruled in
 
 Mercado
 
 v.
 
 Ahmed, supra,
 
 974
 
 *769
 
 F.2d 863.
 
 (Montalvo
 
 v. Lopez (1994) 77 Haw. 282, 303, fn. 24 [884 P.2d 345, 366].)
 

 Having determined Smith’s testimony was inadmissible as a matter of law, we turn to the issue of prejudice. We must examine all the evidence to determine whether “it is reasonably probable that a different result would have been reached absent the error. (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475.)”
 
 (Andrews
 
 v.
 
 City and County of San Francisco
 
 (1988) 205 Cal.App.3d 938, 948 [252 Cal.Rptr. 716].) If so, reversal is required.
 
 (Daly
 
 v.
 
 General Motors Corp.
 
 (1978) 20 Cal.3d 725, 746 [144 Cal.Rptr. 380, 575 P.2d 1162].)
 

 Because loss of enjoyment of life is simply one component of pain and suffering damages, presenting the jury with a formula for separately calculating hedonic damages created a risk of double recovery for pain and suffering and loss of enjoyment of life. The jury heard plaintiff’s testimony regarding the drastic lifestyle changes she had made because of her injuries, and was told it could award “Reasonable compensation for any pain, discomfort, fears, anxiety and other mental and emotional distress suffered by the plaintiff and of which injury was a cause and for similar suffering reasonably certain to be experienced in the future from the same cause. . . .” Plaintiff’s testimony alone was sufficient to support a general damages award that included compensation for loss of enjoyment of life. But there was more than just plaintiff’s testimony.
 
 [13]
 
 The jury also heard Smith’s expert testimony on how much a life is worth and how to calculate hedonic damages by multiplying that figure by the percentage of plaintiff’s disability.
 

 While the judge correctly instructed the jury there is no single mathematical formula for computing pain and suffering damages, the instruction was insufficient to cure the error of admitting Smith’s testimony. Plaintiff’s counsel’s argument that Smith’s testimony was unrefuted rendered the instruction a mere wink and a nod. It is reasonably probable and almost a certainty the jury awarded a double recovery. Accordingly, the admission of Smith’s testimony was prejudicial.
 

 
 *770
 
 Disposition
 

 We reverse the judgment and remand for a new trial on damages. Defendants are awarded costs on appeal.
 

 Vogel (Miriam A.), J., and Masterson, J., concurred.
 

 A petition for a rehearing was denied January 28, 1998, and respondent’s petition for review by the Supreme Court was denied April 15, 1998. Kennard, J., was of the opinion that the petition should be granted.
 

 [1]
 

 "The term hedonic damages itself was first suggested by economist Stanley Smith in the case of Sherrod v. Berry [(N.D.Ill. 1985) 629 F.Supp. 159, affirmed (7th Cir. 1987) 827 F.2d 195, vacated (7th Cir. 1988) 835 F.2d 1222, reversed on other grounds (7th Cir. 1988) 856 F.2d 802], Hedonic damages derives its name from the Greek word ‘hedonikos’ meaning pleasure or pleasurable. As interpreted by the courts around the United States, hedonic damages means either a loss of enjoyment of life or loss of life’s pleasures.” (Price,
 
 Hedonic Damages: To Value a Life or Not to Value a Life?
 
 (1993) 95 W.Va. L.Rev. 1055, 1056, fns. omitted.) Smith is the same economist who testified as plaintiff’s hedonic damages expert in this case.
 

 [2]
 

 In
 
 Garcia
 
 v.
 
 Superior Court
 
 (1996) 42 Cal.App.4th 177 [49 Cal.Rptr.2d 580], Division Four of this appellate district denied a writ of mandate petition seeking to overturn an order striking a cause of action for hedonic damages in a wrongful death action filed under 42 United States Code section 1983. Division Four held that California’s statute governing the survival of actions excludes damages for the decedent’s pain and suffering and is not inconsistent with federal law. Specifically,
 
 Garcia
 
 held that “[t]he trial court was not required to allow plaintiff to seek hedonic damages, a concept foreign to our state survival statute.” (42 Cal.App.4th at p. 180.)
 

 Garcia
 
 did not reach the issue of whether expert testimony on the value of life and how to compute hedonic damages is admissible in a personal injury trial.
 

 [3]
 

 Although plaintiff’s business profits fell immediately after the accident, her company is again growing and more profitable than ever.
 

 [4]
 

 Defendants raised numerous grounds below for excluding Smith’s testimony. They included: (1) there is no consensus among experts in the field that a scientific method for computing hedonic damages exists
 
 (People
 
 v.
 
 Leahy
 
 (1994) 8 Cal.4th 587, 611-612 [34 Cal.Rptr.2d 663, 882 P.2d 321];
 
 People
 
 v.
 
 Kelly
 
 (1976) 17 Cal.3d 24, 30-32 [130 Cal.Rptr. 144, 549 P.2d 1240]); (2) the method of computing hedonic damages is not a matter for which expert testimony is admissible under Evidence Code section 801; (3) Smith’s testimony would be more prejudicial than probative and would enflame the jury (Evid. Code, § 352); (4) the evidence is inadmissible under California law which prohibits a separate instruction on loss of enjoyment of life damages
 
 (Huff v. Tracy
 
 (1976) 57 Cal.App.3d 939, 942-944 [129 Cal.Rptr. 551]) and precludes a double recovery for pain and suffering and loss of enjoyment of life; and (5) the evidence is speculative and invades the province of the jury to compute the amount of general damages.
 

 [5]
 

 Miller,
 
 Willingness to Pay Comes of Age: Will the System Survive?
 
 (1989) 83 Nw. U. L.Rev. 876, 879.
 

 [6]
 

 “There are four views as to the recovery of damages for loss of enjoyment of life (hedonic damages): (1) such damages are not recoverable; (2) such damages are recoverable as a part of the damages for pain and suffering; (3) such damages are recoverable as an element of the permanency of injury; and (4) such damages are recoverable as a separate element of damages.” (3 Stein on Personal Injury Damages (1992) Mental Anguish, § 3:18:1, p. 283, fn. omitted; see Note,
 
 The Semantical Bifurcation of Noneconomic Loss: Should Hedonic Damage Be Recognized Independently of Pain and Suffering Damage?
 
 (1990) 75 Iowa L.Rev. 1275.)
 

 Much of the debate has focused on whether the plaintiff must have been conscious or aware of the injury to recover hedonic damages. The Supreme Court of Ohio held that hedonic damages are not available to a plaintiff who was injured either in útero or at birth.
 
 (Ramos
 
 v.
 
 Kuzas
 
 (1992) 65 Ohio St.3d 42 [600 N.E.2d 241].) In New York, the highest state court held that hedonic damages are not recoverable independently of pain and suffering damages and reversed an award of hedonic damages to a comatose plaintiff.
 
 (McDougald
 
 v.
 
 Garber
 
 (1989) 73 N.Y.2d 246, 253 [538 N.Y.S.2d 937, 536 N.E.2d 372, 374].) But a New Jersey court held in
 
 Eyoma
 
 v.
 
 Falco
 
 (1991) 247 N.J.Super. 435 [589 A.2d 653], that pain and suffering damages may be awarded where the patient was comatose.
 

 [7]
 

 One author has argued, however, for a new system of determining pain and suffering damages that “base[s] the award upon a reasonable person’s willingness to pay to eliminate that risk.” (Geistfeid,
 
 Placing a Price on Pain and Suffering: A Method for Helping Juries Determine Tort Damages for Nonmonetary Injuries
 
 (1995) 83 Cal.L.Rev. 773, 780.)
 

 [8]
 

 Attorneys may, however, ask the jury to measure the plaintiff’s pain and suffering on a “per diem” basis.
 
 (Beagle
 
 v.
 
 Vasold, supra,
 
 65 Cal.2d at pp. 181-182.) The court in
 
 Beagle
 
 explained that while the “per diem” argument is permissible, the “golden rule” argument is not: “In holding that counsel may properly suggest to the jury that plaintiff’s pain and suffering be measured on a ‘per diem’ basis, we do not imply that we also approve the so-called ‘golden rule’ argument, by which counsel asks the jurors to place themselves in the plaintiff’s shoes and to award such damages as they would ‘charge’ to undergo equivalent pain and suffering.”
 
 (Id.
 
 at p. 182, fn. 11.)
 

 [9]
 

 For example, defendants objected, based on
 
 People
 
 v.
 
 Kelly, supra,
 
 17 Cal.3d 24 and
 
 People
 
 v.
 
 Leahy, supra,
 
 8 Cal.4th 587, that there is no consensus among experts in Smith’s field that a scientific method exists for computing hedonic damages. We need not address that contention here because we conclude Smith’s testimony was inadmissible, as a matter of law, for other reasons.
 

 [10]
 

 Defendants raised no claim of instructional error on appeal. In this case, the jury received the following standard instructions on pain and suffering damages: “The defendants having admitted liability, you must award plaintiff damages in an amount that will reasonably compensate for each of the following elements of claimed loss or harm, provided that you find it was or will be suffered by plaintiff and was or will be caused by such defendants’] conduct.” (Based on BAJI No. 14.01 (8th ed. 1994).)
 

 “The amount of such award shall include: HQ Medical expenses ['JQ Loss of earnings fl] Loss of use of property [QQ Costs of repair or replacement [QQ Loss of employment [QQ Loss of business or employment opportunities [QQ Pain and suffering [QQ Inconvenience [QQ Mental suffering [1 Emotional distress.” (Based on BAJI No. 14.01 (8th ed. 1994).)
 

 “Reasonable compensation for any pain, discomfort, fears, anxiety and other mental and emotional distress suffered by the plaintiff and of which injury was a cause and for similar suffering reasonably certain to be experienced in the future from the same cause. [QD No definite standard or method of calculation is prescribed by law by which to fix reasonable compensation for pain and suffering. Nor is the opinion of any witness required as to the amount of such reasonable compensation. Furthermore, the argument of counsel as to the amount of damages is not evidence of reasonable compensation. In making the award for pain and suffering you shall exercise your authority with calm and reasonable judgment and the damages you fix shall be just and reasonable in the light of the evidence.” (Based on BAJI No. 14.13 (8th ed. 1994).)
 

 [11]
 

 Defendants cited Evidence Code section 801 below, and also specifically referred to subdivision (b) of that section. Plaintiffs assert that because defendants did not also specifically refer to subdivision (a), defendants may not rely upon subdivision (a) on appeal. We do not read the record so narrowly. It is sufficient that defendants cited section 801 in general and argued, consistent with subdivision (a), that Smith’s testimony would not assist the jury.
 

 [12]
 

 That is not to say, however, that we believe the verdict was so large as to shock the conscience or suggest it was the result of passion or prejudice. Plaintiff testified she has substantial pain, cannot indulge in her passion for sports, and has lived a comparatively drab existence following the accident. On this record, we cannot say, as a matter of law, that a verdict of $890,000 is in any way excessive.
 

 [13]
 

 In cases involving more severe injuries where the plaintiff shows the jury a “day in the life” videotape to support a pain and suffering award, the admission of expert testimony on hedonic damages would present an even stronger danger that the jury would award double damages. As was stated in
 
 Jones
 
 v.
 
 City of Los Angeles
 
 (1993) 20 Cal.App.4th 436 [24 Cal.Rptr.2d 528]: “The videotape best describes the problems Ms. Jones encounters on a daily basis in a way mere oral testimony may not convey to the jurors. The videotape also best demonstrates the everyday problems a person with paraplegia encounters as a result of an injury of this kind. Moreover, the videotape is the most effective way to explain to the jury the extent of the assistance and medical attention required as a result of being rendered a paraplegic.”
 
 (Id.
 
 at p. 446.)