ARNOLD, et al. *v.* ELLIS

No. 40561 November 4, 1957 97 So. 2d 744

*Roger C. Landrum,* Columbus; *George J. Schweizer, Jr.,* Greenville, for appellants.

*L. W. Brown,* Starkville, for appellee.

Lee, J.

Mrs. Mary Purvis Ellis sued Hunter Arnold and Mrs. Ruth Arnold for personal injuries alleged to have been sustained by her as a result of their negligent operation of an automobile. The jury returned a verdict in her favor for the sum of $15,000, and, from the judgment rendered thereon, the Arnolds appealed.

The defendants lived at Sessums in Oktibbeha County. Hunter Arnold, the owner of a Buick automobile, told his wife, who was planning to attend a district demonstration meeting at State College, to carry a tractor tire to a certain service station in Starkville for repair. On April 27, 1956, Mrs. Arnold drove by the college, where her meeting was to be held, into town, delivered the tire, and was returning to the college to attend her meeting. She was proceeding east on Main Street when, at the intersection of that street with Montgomery Street, she collided with a Chrysler automobile, being driven by Mrs. Ellis south on Montgomery Street. There was an automatic traffic light at this intersection. The colors green, amber and red, respectively indicated ''go'', ''change'' and ''stop.''

Mrs. Ellis testified that her speed at the time was eighteen to twenty miles an hour. As she approached the intersection, she saw the car coming from the right, but it was some distance away, at least two houses from the corner. The signal light was green, entitling her to proceed through the intersection, and she did not expect that the approaching car would run a red light and hit her. When she had passed over half of the distance, suddenly her car was struck by the Buick with such a terrific impact that it was turned around to the north part of the intersection and headed in the direction from which it had come. Mrs. Carolyn Franklin, who was in the Ellis car, gave corroboration. She testified that Mrs. Ellis was driving slowly and carefully; and that they had the green light; that they were in the intersection before she saw the Buick approaching from the right; and that it was an awful blow. The evidence of Ben O'Neal, a student, in an automobile on Main Street, was to the effect that the light was red against Mrs. Arnold at the time of the collision. Alton Peeks, a policeman, gave corroboration as to the position of the cars after the collision. Mrs. Ellis also testified that Mrs. Arnold, just after the wreck, said she did not know why she ran the red light.

Mrs. Arnold testified that the light was green before she got to the intersection, but as she went under it, she looked and realized that it was red. However, she saw no one approaching and did not see the Chrysler until it was immediately in front of her. While she did not remember telling Mrs. Ellis that she did not know why she ran the red light, she did not deny that she made the statement. She did admit however that, in a later statement, she said "I looked at the traffic light again and it was red and I was too close to the intersection to stop."

Mrs. Ellis testified that she was thirty-five years of age and the mother of two children, six and two years of

age. Before the wreck she was in good health, took care of her children, did general housework, and worked in the yard. She slept soundly and had no headaches. She is a registered medical technologist, with an earning capacity of at least $300 per month, although she was not practicing her profession at the time. Since her injury, she cannot pick up her children to bathe or minister to them properly, or do her customary work. She has severe pain in her neck and back, the latter being similar to low back pains in labor. She sleeps on a hard surface bed and wears a body brace, which is very uncomfortable. She does not sleep well, suffers from headaches, has to go to the bathroom more often at night, and has had to curtail her social activities.

Dr. R. S. Ellis, her husband, examined her following the wreck. At first, except for tenderness and severe pain in her back, his findings were not positive. Consequently he sent her first to Dr. Elton S. Thomas at Columbus, and then later to Dr. George D. Purvis at Jackson. However, after a lapse of time, her back became stiff and the muscles were rigid. It was his opinion that she suffered an injury that permeated the vertebras in the lower back and the neck and that her pain and suffering will be permanent. If an operation is finally necessary, it seldom leaves the back in a satisfactory condition.

Dr. C. L. Ezell made X-ray pictures and examined Mrs. Ellis on October 10 and 13, 1956. He found pain and tenderness over the fifth and sixth cervical vertebras with spasm of the muscles of the neck. It was his opinion that some neural herniation was pressing on the spinal nerve, which he attributed to a ruptured disc. It is impossible to tell how long she will have this pressure, but there will be pain from this permanently. If it continues, sooner or later she will have to undergo surgery. Her spine is not in a normal position. In his opinion she is not affected by spina bifida.

Dr. Joe Brewer also made X-ray pictures and an examination of Mrs. Ellis on October 16, 1956. The symptoms which he observed were similar to those mentioned by Dr. Ezell. It was his opinion that a vertebra had slipped enough to decrease the cartilage between them. Raising the leg at thirty degrees caused pain when she should have been able to raise it at a ninety degree angle without pain. In his opinion, pain resulting from such an injury grows progressively worse, and she is permanently disabled.

The reports of Dr. Thomas and Dr. Purvis, who made examinations of Mrs. Ellis, were, without objection from the plaintiff, introduced in evidence. In the former, the doctor had found a moderate tenderness over the lumbar vertebras, and in the latter the doctor had diagnosed the condition as ''static low back strain'', possibly following the wreck. Dr. Thomas was offered as a witness by defendants. It was his opinion that Mrs. Ellis had a spina bifida, a beginning separation of the spine. He found no abnormality in the cervical area or the disc. She had a congenital defect in her back. He admitted, however, that the accident aggravated this condition with an acute strain superimposed on the abnormality, and that, without the injury, she could have gone through life with the defect. There is no way to tell when the strain will end. She should improve, but it does not take much for the pain to recur.

During the trial, the plaintiff gave her consent for Dr. Dempsey Strange to examine her. He did so, and was offered as a witness by the defendants. He was of the opinion that Mrs. Ellis had a congenital defect and not a ruptured disc. He could find nothing specific outside of back strain with congenital deformity. He thought she had some pain, but that she exaggerated it, and he does not expect it to last forever. He admitted that chronic back strain produces the most severe suffering; and that, following the history, if she had come to him,

he would have had to assume that the wreck started the pain.

Defense counsel made a motion for a mistrial because, it was said, plaintiff's counsel, in the statement of his case to the jury, used a blackboard to show that Mrs. Ellis, of the age of thirty-five years and with a life expectancy of thirty-three years, at twenty cents an hour for the pain which she had endured and would endure, would be damaged to the amount of $57,816. The motion was overruled and appellants contend that this was error.

 ██ It is practically impossible to prove the exact dollar and cent value of pain in varying degrees. Such determination must be left to the jury, who, in the exercise of common sense and judgment, are vested with the right and duty to make a fair appraisal of the amount which should be awarded as compensation for that element of damage. ██ Counsel, in his chart, was merely stating what he thought would be the damage for his client's pain and suffering. He had a perfect right to do this, as was held in Four-County Electric Power Association v. Clardy, 221 Miss. 403, 73 So. 2d 144, where under similar circumstances, this Court said: ██ "Counsel had the right to state to the jury what he thought would be proper damages for the jury to award for this item, (pain) in his opening statement and arguments." See also Nehi Bottling Company v. Jefferson, 226 Miss. 586, 84 So. 2d 684, and cases there cited. The motion was properly overruled.

 ██ Appellant Hunter Arnold contends that he was entitled to a directed verdict because the proof showed that his wife was not engaged about his business at the time of the wreck.

However, the automobile was his. Mrs. Arnold had driven past the place where her meeting was to be held in order to deliver her husband's tractor tire to the service station for repair. In other words, the trip from the college to town and return was made by Mrs. Arnold,

not about her own, but about her husband's, business. She had to get back to the college before engaging in her business, and it was while she was returning to the college that she had the wreck. Consequently the requested peremptory instruction was properly refused. Barmore v. V. S. & P. R. Company, 85 Miss. 42, 38 So. 210; Southern Bell Tel. and Tel. Company v. Quick, 167 Miss. 438, 149 So. 107; Delta Cotton Oil Company v. Elliott, 179 Miss. 200, 172 So. 737; Eagle Motor Lines, Inc. v. Mitchell, 223 Miss. 398, 78 So. 2d 482; Brown and Root, Inc. v. Continental Southern Lines, 228 Miss. 15, 87 So. 2d 257; Colotta v. Phillips, 226 Miss., 870 85 So. 2d 574. See also Primos v. Gulfport Laundry & Cleaning Company, 157 Miss. 770, 128 So. 507.

 There was no error in the refusal of a requested instruction that it was negligence for the plaintiff to have failed to keep a lookout for the Arnold car after it had been seen before either car entered th intersection. The evidence did not warrant this instruction. ██ █ Whether or not Mrs. Ellis was negligent in any respect was for the jury. The defendants obtained several instructions which presented that issue most liberally for them.

The appellants also contend that the verdict was grossly excessive.

 The evidence as to the extent of the injury has been summarized in the statement of facts, and need not be referred to again. On this issue the language used in Mississippi Central Railroad Company v. Smith, 176 Miss. 306, 168 So. 604, in affirming a $25,000 verdict on a new trial after the plaintiff had refused to accept $7,-000 on remittitur on the first trial, 173 Miss. 507, 154 So. 533, 159 So. 562, might well be adopted here, to wit: * * * on the evidence, the jury had the right to say that the appellee was not guilty of contributory negligence, and it was abundantly proven that the injury to the appellee is permanent, is of such serious character that

she will continuously suffer pain therefrom, and is thereby physically incapacitated, to a large extent, and her earning capacity is practically destroyed. We cannot say, therefore, that the verdict is excessive.'' See also Sohio Petroleum Company v. Fowler, 231 Miss. 72, 94 So. 2d 350, where the injuries did not appear to be as substantial as here, and the Court approved an award of $13,383. We cannot say that the verdict is excessive, especially so excessive as to evince prejudice or passion.

Consequently the judgment of the trial court must be, and is, affirmed.

Affirmed.

*McGehee, C. J.,* and *Hall, Holmes* and *Ethridge, JJ.,* concur.