[L. A. No. 28909. In Bank. Aug. 31, 1966.]

CARL BEAGLE, Plaintiff and Appellant, v. ELIZABETH
VASOLD et al., Defendants and Respondents.

Rubin, Seltzer & Solomon and Richard I. Singer for Plaintiff and Appellant.

Edward I. Pollock, Theodore A. Horn, Richard L. Oliver, Robert G. Beloud, Robert E. Cartwright, Neil D. Heily and Edward L. Lascher as Amici Curiae on behalf of Plaintiff and Appellant.

Higgs, Fletcher & Mack, Edward M. Wright and Dan E. Hedin for Defendants and Respondents.

Parker, Stanbury, McGee, Peckham & Garrett, Crider, Tilson & Ruppé, Betts & Loomis, Gilbert, Thompson & Kelly and Jean Wunderlich as Amici Curiae on behalf of Defendants and Respondents.

MOSK. J.—Plaintiff brought an action against defendants for personal injuries suffered by him as the result of an automobile accident. The jury returned a verdict in his favor in the sum of $1,719.48, and he appeals from the judgment entered thereon, contending that the damages awarded are inadequate as a matter of law. The only issue raised on this appeal by any of the parties, including amici curiae, is whether the trial court erred in prohibiting plaintiff's counsel from stating in argument to the jury the amount of general damages claimed by plaintiff, either in terms of a total sum or of a sum for a time segment. We conclude it was error to restrict counsel's arguments in that regard.

Plaintiff's injuries resulted from an accident in which a car driven by Kenneth Vasold went over an embankment while rounding a curve in the road. Vasold died as a result of his injuries. Plaintiff and two other occupants of the car, Beverly Adams, and Vasold's wife, Elizabeth, were injured.[1] In the complaint, plaintiff prayed for $61,025.18 in general damages, as well as compensation for medical expenses, loss of earnings, and costs of suit.

The trial court informed plaintiff's attorney in chambers that he would not be permitted to mention to the jury "the value of his action in dollars" in a lump sum or as to "any per diem damages such as so many dollars per day, or so many dollars per month" because "[S]uch is not evidence."[2] In

---

[1]The defendants in this action are Elizabeth Vasold and the administrator of Vasold's estate.

[2]The following colloquy occurred between plaintiff's attorney and the court during the opening statement:

"MR. SINGER: I want to talk just very briefly with you about the amount of money in controversy in this case. Before I do, I remember your Honor's admonition in chambers; that did not apply to opening statements, is that correct, your Honor?

"THE COURT: Yes. At all times.

"MR. SINGER: At all times, your Honor?

"THE COURT: Yes. Except as to your special.

"MR. SINGER: Oh, I see.

"THE COURT: But as to the general.

"MR. SINGER: All right. Thank you, your Honor."

accordance with this request, counsel confined his arguments on the question of damages to the amount of past and anticipated medical expenses and loss of earnings, a description of plaintiff's injuries, and general statements to the effect that plaintiff was entitled to recover for past and future pain and suffering resulting from the accident.[3] Plaintiff's medical expenses up to the time of trial were $1,377.48, and his total claim for special damages was $21,502.48. Thus the jury's verdict of $1,719.48 amounts to $342 more than the medical expenses incurred prior to trial. His motion for a new trial on the ground of inadequacy of the damages was denied by the trial court.

On this appeal, it is contended that the trial court's action in restricting the argument of counsel on the issue of general damages was erroneous and that the error was prejudicial.

---

Prior to the summation, the court and counsel discussed the scope of permissible argument in chambers as follows:

"THE COURT: My suggestion to counsel is that during their summation that no calculations be made, either verbally or on the blackboard, of any per diem damages such as so many dollars per day; or so many dollars per month. Further, that the opinion of counsel not be given as to the value of his action in dollars. Such is not evidence.

"MR. SINGER: If I understand the Court's instructions on this point, I am then permitted to talk in specific figures about the special damages, the medical damages?

"THE COURT: No question about that.

"MR. SINGER: And the loss of wages—but not about the estimated future loss of wages—in terms of specific figures, I may do so?

"THE COURT: Yes. That is special. This only applies to general damages.

"MR. SINGER: I see. Then I may only not speak in terms of figures as to the amount to be awarded to my clients, if there is an award, for permanent disability and for pain and suffering; is that generally correct?

"THE COURT: This is my request: That counsel not tell the jury that in his opinion the general damages are worth $50,000 or $40,000, or $25. Of course, as to your special, naturally those are fixed amounts. They have been testified to and they are in the evidence; but there is nothing in the evidence whatsoever of any amount of general damages. Do you understand each one?

"MR. SINGER: Yes."

[3]With regard to the question of general damages, plaintiff's attorney stated in closing argument: "Mr. Beagle's vision, of course, was affected by the accident. His life expectancy is 30.5 years (writing). And he is entitled to an award based on the permanent disability that he will incur as the result of this accident. And, of course, an award for the pain and suffering which he incurred as the result of this accident and will incur in the future. You will recall Mr. Beagle was in the hospital 13 days. He, of course, was injured in the accident with severe head lacerations, and has worn a corset-type brace for the last two years as the result of the accident. You are entitled to take these things into consideration as far as pain and suffering, and the pain and suffering that he will necessarily incur in the future."

One of the most difficult tasks imposed upon a jury in deciding a case involving personal injuries is to determine the amount of money the plaintiff is to be awarded as compensation for pain and suffering. No method is available to the jury by which it can objectively evaluate such damages, and no witness may express his subjective opinion on the matter. (See 7 Wigmore, Evidence (3d ed. 1940) § 944, pp. 55-56.) In a very real sense, the jury is asked to evaluate in terms of money a detriment for which monetary compensation cannot be ascertained with any demonstrable accuracy. ██ As one writer on the subject has said, ''Translating pain and anguish into dollars can, at best, be only an arbitrary allowance, and not a process of measurement, and consequently the judge can, in his instructions, give the jury no standard to go by; he can only tell them to allow such amount as in their discretion they may consider reasonable. . . . ██ The chief reliance for reaching reasonable results in attempting to value suffering in terms of money must be the restraint and common sense of the jury. . . .'' (McCormick on Damages, § 88, pp. 318-319.)

Before turning to the question of the propriety of the so-called ''per diem'' argument,[4] it is significant to note that, while no case has been found specifically holding an attorney may inform the jury as to the total amount of the general damages sought by the plaintiff, there is a clear implication that such a statement may be made by an attorney, and defendants here do not seriously challenge plaintiff's assertion that the trial court erred in limiting counsel's argument in this regard.

It has long been a courtroom practice of attorneys in this state to tell the jury the total amount of damages the plaintiff seeks, and no questioning of the technique has come to our attention. (See dissenting opinion of Carter, J., in *Sanguinetti* v. *Moore Dry Dock Co.* (1951) 36 Cal.2d 812, 823, 842 [228 P.2d 557]; *Ritzman* v. *Mills* (1929) 102 Cal.App. 464, 472 [283 P. 88].) ██ Moreover, an attorney may and frequently does read the complaint, including the prayer, to the jury. (*Knight* v. *Russ* (1888) 77 Cal. 410, 414-415 [19 P. 698]; see *Ritzman* v *Mills, supra,* at p. 472.) ██ Finally, the trial court may instruct the jury that the plaintiff claims a certain

---

[4]This term will be used in the opinion to refer to argument by counsel which suggests the segmentation of the damages to be allowed for pain and suffering into a stated amount of money representing a certain period of time, such as $5 for each day, etc.

amount as damages in his complaint and that no more than this sum may be awarded. (*Sanguinetti* v. *Moore Dry Dock Co., supra,* at p. 816; *Lahti* v. *McMenamin* (1928) 204 Cal. 415, 421 [268 P. 644]; *McNulty* v. *Southern Pac. Co.* (1950) 96 Cal.App.2d 841, 852-853 [216 P.2d 534].) In the *Lahti* case it was said that such an instruction "is usually given in negligence cases, and it is difficult to understand how a jury in such cases can be properly instructed by the court" without a direction of this type. (204 Cal. at p. 421; see also BAJI Nos. 173, 173-A, 173-B, 173-C.) On the other hand, Pennsylvania and New Jersey prohibit disclosure of this information to the jury. See *Reese* v. *Hershey* (1894) 163 Pa. 253 [29 A. 907, 43 Am.St.Rep. 795]; *Porter* v. *Zeuger Milk Co.* (1939) 138 Pa.Super. 48 [7 A.2d 77]; *Botta* v. *Brunner* (1958) 26 N.J. 82 [138 A.2d 713, 725].)

The question whether an attorney may argue to the jury that his client's damages for pain and suffering may be measured in terms of a stated number of dollars for specific periods of time presents a more difficult problem. Few issues in the area of tort law have evoked more controversy in the last decade. While no California case has decided the matter (but see dissenting opinion in *Seffert* v. *Los Angeles Transit Lines* (1961) 56 Cal.2d 498, 509 [15 Cal.Rptr. 161, 364 P.2d 337]), the controversy has been resolved in most of our sister states and in some federal jurisdictions.

Twenty-one jurisdictions which have passed on the issue permit an attorney to make the "per diem" argument. (*Baron Tube Co.* v. *Transport Ins. Co.* (5th Cir. 1966) 365 F.2d 858; *Atlantic Coast Line R.R. Co.* v. *Kines* (1963) 276 Ala. 253 [160 So.2d 869]; *Vanlandingham* v. *Gartman* (1963) 236 Ark. 504 [367 S.W.2d 111]; *Newbury* v. *Vogel* (1963) 151 Colo. 520 [379 P.2d 811]; *Evening Star Newspaper Co.* v. *Gray* (D.C. Mun. Ct. App. 1962) 179 A.2d 377; *Ratner* v. *Arrington* (Fla.App. 1959) 111 So.2d 82; *Southern Indiana Gas & Elec. Co.* v. *Bone* (1962) 135 Ind.App. 531 [180 N.E.2d 375], affd. 244 Ind. 672 [195 N.E.2d 488]; *Corkery* v. *Greenberg* (1962) 253 Iowa 846 [114 N.W.2d 327]; *Louisville & Nashville R.R. Co.* v. *Mattingly* (Ky.App. 1960) 339 S.W.2d 155; *Little* v. *Hughes* (La.App. 1961) 136 So.2d 448; *Eastern Shore Public Service Co.* v. *Corbett* (1962) 227 Md. 411 [177 A.2d 701], affd. 180 A.2d 681; *Yates* v. *Wenk* (1961) 363 Mich. 311 [109 N.W.2d 828]; *Flaherty* v. *Minneapolis & St. Louis Ry. Co.* (1958) 251 Minn. 345 [87 N.W.2d 633]; *Arnold* v. *Ellis* (1957) 231 Miss. 757 [97 So.2d 744]; *Wyant* v. *Dunn*

(1962) 140 Mont. 181 [368 P.2d 917]; *Johnson* v. *Brown* (1959) 75 Nev. 437 [345 P.2d 754]; *Grossnickle* v. *Village of Germantown* (1965) 3 Ohio St.2d 96 [209 N.E.2d 442]; *Edwards* v. *Lawton* (1964) 244 S.C. 276 [136 S.E.2d 708]; *Hernandez* v. *Baucum* (Tex.Civ.App. 1961) 344 S.W.2d 498; *Olsen* v. *Preferred Risk Mutual Ins. Co.* (1960) 11 Utah 2d 23 [354 P.2d 575]; *Jones* v. *Hogan* (1960) 56 Wn.2d 23 [351 P.2d 153]; see also *Imperial Oil, Ltd.* v. *Drlik* (6th Cir. 1956) 234 F.2d 4.) Of these jurisdictions, Florida, Montana, Nevada, Utah and Washington hold that the matter rests in the sound discretion of the trial judge.[5]

In 11 jurisdictions the argument is not permitted. (*Henne* v. *Balick* (1958) 51 Del. 369 [146 A.2d 394]; *Franco* v. *Fujimoto* (1964) 47 Hawaii 408 [390 P.2d 740]; *Caley* v. *Manicke* (1962) 24 Ill.2d 390 [182 N.E.2d 206]; *Caylor* v. *Atchison, Topeka & Santa Fe Ry. Co.* (1962) 190 Kan. 261 [374 P.2d 53]; *Faught* v. *Washam* (Mo. 1959) 329 S.W.2d 588; *Duguay* v. *Gelinas* (1962) 104 N.H. 182 [182 A.2d 451]; *Botta* v. *Brunner* (1958) *supra,* 138 A.2d 713; *Certified T.V. & Appliance Co.* v. *Harrington* (1959) 201 Va. 109 [109 S.E.2d 126]; *Crum* v. *Ward* (1961) 146 W.Va. 421 [122 S.E.2d 18]; *Affett* v. *Milwaukee & Suburban Transport Corp.* (1960) 11 Wis.2d 604 [106 N.W.2d 274]; *Henman* v. *Klinger* (Wyo. 1966) 409 P.2d 631; see also *Paley* v. *Brust* (1964) 21 App.Div.2d 758 [250 N.Y.S.2d 356]; *King* v. *Railway Express Agency, Inc.* (N.D. 1961) 107 N.W.2d 509.)

The conflict has also been thoroughly debated in the law reviews. An examination of a large number of articles on the subject indicates that a substantial majority of the authors are

[5]Defendants assert that only one of the cases cited above for the majority view (*Newbury* v. *Vogel* (1963) *supra,* 379 P.2d 811) involved a situation where, as here, the trial court refused to allow the ''per diem'' argument and the appellate court held the refusal erroneous, and that in the remainder of the cases cited for the majority view the trial court permitted ''per diem'' argument and the appellate court upheld the lower court's determination that such argument was proper. It follows, therefore, argue defendants, that the majority rule is not that the ''per diem'' argument may be made by an attorney as a matter of right but only that the issue is to be determined in the sound discretion of the trial court. This is an incorrect analysis. Some of the cases, as indicated above, expressly provide that the question whether to permit ''per diem'' argument is committed to the discretion of the trial court. Those which do not so state hold generally that for the reasons set forth in the subsequent portions of this opinion, the ''per diem'' argument is a proper one. Presumably, a refusal by the trial court to permit the ''per diem'' type of argument would result in a reversal of the judgment in these jurisdictions if the issue were raised in the proper context and prejudice resulted from the refusal.

of the view that it is desirable to permit "per diem" argument.[6] (See generally *favoring "per diem" argument*: Phillips, *Botta in Focus* (1962) Trial Law. Guide 69; Note (1958) 12 Rutgers L.Rev. 522; Note (1962) 60 Mich.L.Rev. 612; Note (1959) 43 Minn.L.Rev. 832; Note (1963) 17 Ark.L.Rev. 94; Note (1961) 41 B.U.L.Rev. 432; Note (1961) 38 Chi.-Kent L.Rev. 62; Note (1959) 28 U.Cinc.L.Rev. 138; Note (1962) 11 Clev.-Mar.L.Rev. 495; Note (1959) 36 Dicta 373; Note (1962) Duke L.J. 344; Note (1962) 13 Hastings L.J. 502; Note (1962) 11 Kan.L.Rev. 170; Note (1961) 10 Kan.L.Rev. 93; Note (1960) 38 N.C.L.Rev. 289; Note (1963) 39 N.D.L.Rev. 209; Note (1960) 33 So.Cal.L.Rev. 214; Note (1962) 14 S.C.L.Q. 442; generally *disfavoring "per diem" argument*: Note (1963) 12 De Paul L.Rev. 317; Note (1961) 49 Ky.L.J. 592; Note (1962) La.L.Rev. 461; Note (1962) 23 Ohio St. L.J. 573; Note (1963) 16 Okla.L.Rev. 468; Note (1962) Vand.L.Rev. 1303; Note (1958) 4 Vill.L.Rev. 137; Note (1962) 64 W.Va.L.Rev. 237; Note (1959) 61 W.Va. L.Rev. 302.)

We believe the reasons hereinafter discussed persuasively require California to align itself with the majority of jurisdictions on this issue.

The opening guns in the battle to prohibit an attorney from arguing damages on a "per diem" basis were sounded in *Botta* v. *Brunner* (1958) *supra*, 138 A.2d 713, and every decision since *Botta* holding such argument to be improper has followed, at least in part, the reasoning employed in that case. In *Botta* the Supreme Court of New Jersey upheld the trial court's refusal to permit plaintiff's attorney to suggest that his client's damages for pain and suffering be measured by a stated number of dollars for each day, essentially on the rationale that such statements of counsel are not evidence and have no foundation in the evidence, but in the minds of jurors they substitute "unproven, speculative and fanciful standards of evaluation for evidence."

The court stated: "In the final analysis, we hold the view that suggestions of the sort we are asked to approve here constitute an unwarranted intrusion into the domain of the jury. . . . 'Jurors know the nature of pain, embarrassment and inconvenience, and they also know the nature of money.

---

[6]Not included in this compilation are articles from journals published by organizations such as the Defense Research Institute, Inc., and the American Trial Lawyers Association, formerly known as the National Association of Claimants Compensation Attorneys.

Their problem of equating the two to afford reasonable and just compensation calls for a high order of human judgment, and the law has provided no better yardstick for their guidance than their enlightened conscience. Their problem is not one of mathematical calculation but involves an exercise of their sound judgment of what is fair and right.' '' (138 A.2d at p. 725.)

With commendable forthrightness *Botta* overruled a long line of New Jersey cases which had held it proper for an attorney to advise the jury of the *total* amount of damages sought by the plaintiff or to suggest a total amount as reasonable compensation, on the ground that it would be inconsistent to allow the jury to know the total amount of damages while prohibiting counsel from suggesting by means of a "per diem" evaluation how he arrived at the total.

We do not find the reasoning of *Botta* convincing. It is, of course, axiomatic that pain and suffering are difficult to measure in monetary terms. Yet the inescapable fact is that this is precisely what the jury is called upon to do. As one critic of *Botta* has noted: "The plaintiff sues for money. The defendant defends against an award of money. The jury is limited to expressing its findings in terms of money. Nevertheless, the jury must be precluded from hearing any reference whatever to money. It must retire to the jury room *in vacuo* on this essential of the case where the unmentionable and magical conversion from broken bones to hard cash may then take place." (Note (1958) *supra*, 12 Rutgers L.Rev. 522.)

It is undeniable that the argument of counsel does not constitute evidence. However, it does not follow, as averred in *Botta*, that the suggestion of a sum for damages can have no foundation in the evidence. Indeed it is necessarily inferred from observation of the plaintiff in the courtroom and from expert testimony regarding the nature of his injuries and their consequences. If the jury must infer from what it sees and hears at the trial that a certain amount of money is warranted as compensation for the plaintiff's pain and suffering, there is no justification for prohibiting counsel from making a similar deduction in argument. An attorney is permitted to discuss all reasonable inferences from the evidence. (*4-County Electric Power Assn.* v. *Clardy* (1954) 221 Miss. 403 [73 So.2d 144, 151-152, 44 A.L.R.2d 1191] ; *J. D. Wright & Son Truck Line* v. *Chandler* (Tex.Civ.App. 1950) 231 S.W.2d 786, 789.) It would be paradoxical to hold that damages in totality are inferable from the evidence but that when this sum is divided

into segments representing days, months or years, the inference vanishes.

Thus, an attorney who suggests that his client's damages for pain and suffering be calculated on a "per diem" basis is not presenting evidence to the jury but is merely drawing an inference from the evidence given at the trial. Of course, the trial court has the power and duty to contain argument within legitimate bounds and it may prevent the attorney from drawing inferences not warranted by the evidence. For example, counsel should not be permitted to argue future damages for pain and suffering on a "per diem" basis where the evidence would not justify an inference that the plaintiff will suffer pain in the future.

Another dubious aspect of *Botta* is its conclusion that an attorney who employs the "per diem" argument invades the province of the jury. It seems patently clear that an attorney does not interfere with a jury's decision-making powers to any greater extent when he suggests that damages be measured on a segmented basis than when he exhorts the jury to find the defendant negligent. It has never been contended that the jury forsakes its duty of determining whether the defendant acted as a reasonable man because counsel is permitted to discuss the participants' conduct and the inferences to be drawn therefrom. Nor should we conclude as a matter of law that a jury will ignore the court's instructions to award a reasonable amount as compensation for the plaintiff's pain and suffering and that it will inevitably choose an indefensible course of slavishly following counsel's suggestions on damages, merely because he asserts in argument that such compensation should be measured on a "per diem" basis. The jury is, in any event, the ultimate judge of the inferences to be drawn from the evidence presented and it is so instructed by the court.

Many of the authorities, including *Botta*, point out that it is logically inconsistent to permit counsel to inform the jury of the lump sum amount claimed by the plaintiff or to suggest that a certain sum be awarded, while shielding the jury from the suggestion that the total amount may be fragmented to represent periods of time. These cases reason that discussion of a "per diem" amount involves no more speculation than a total figure. (See, e.g., *Yates* v. *Wenk* (1961) *supra,* 109 N.W.2d 828, 831; *Louisville & Nashville R.R. Co.* v. *Mattingly* (1960) *supra,* 339 S.W.2d 155, 161; but see *Caley* v. *Manicke* (1962) *supra,* 182 N.E.2d 206, 209; *Duguay* v. *Gelinas* (1962)

*supra,* 182 A.2d 451; *Affett* v. *Milwaukee & Suburban Transport Corp.* (1960) *supra,* 106 N.W.2d 274, 280; cf. *Franco* v. *Fujimoto* (1964) *supra,* 390 P.2d 740, 748-750.)[7] Indeed, in a Nevada case the court stated that, while it found the reasoning of *Botta* very persuasive, it felt compelled to allow "per diem" argument because of the practice in Nevada of telling the jury the total amount of damages sought by the plaintiff. (*Johnson* v. *Brown* (1959) *supra,* 345 P.2d 754, 759.)[8] Moreover, the jury itself may calculate the segmented amount of a verdict which it has under discussion from the figures available since, in addition to the lump sum amount sought, it is customarily told the life expectancy of the plaintiff where it is claimed there will be future detriment.

Some legal scholars indicate the actual subjective basis for decisions which hold the "per diem" argument improper is the belief such argument results in excessive verdicts (see, e.g., Note (1962) U.Ill.L.F. 269, 274; Note (1960) *supra,* 33 So.Cal. L.Rev. 214, 219) and that courts which prohibit the "per diem" argument demonstrate a lack of confidence in the jury system (see Note (1961) 14 U.Fla.L.Rev. 189, 191; Note (1962) *supra,* 60 Mich.L.Rev. 612, 625). Even if it can be established that larger verdicts result on occasions when the "per diem" argument is employed, it does not necessarily follow that these awards are excessive under the circumstances of the particular cases since, as pointed out hereinafter, both the trial and the appellate courts have the power and the duty to reduce verdicts which are unreasonably large. As was stated in one case, "if the evil feared is excessive verdicts, then the cure ought to be directed against the product, not the practice." (*Johnson* v. *Colglazier* (1965) 348 F.2d 420, 425, 429 (dissenting opinion; the majority opinion in *Johnson* was overruled in *Baron Tube Co.* v. *Transport Ins. Co.* (5th Cir. 1966) *supra,* 365 F.2d 858).)

Some of the cases which cite the danger of excessive damages as a basis for disapproving the "per diem" argument (e.g., *Faught* v. *Washam* (1959) *supra,* 329 S.W.2d 588,

---

[7]In the *Franco* case it was held there was no incompatibility between allowing the court to instruct the jury as to the total amount claimed by the plaintiff, while refusing to permit the "per diem" argument, because the purpose of the former was to advise the jury of the limit on the amount of its verdict. The court expressly refrained from deciding whether it was proper for counsel to argue for a specific lump sum award. (390 P.2d at p. 249, fn. 2.)

[8]As set forth above, Nevada is one of the states which leaves the question of the propriety of "per diem" argument to the discretion of the trial court.

604) point to a Florida case (*Braddock* v. *Seaboard Airline R.R. Co.* (Fla. 1955) 80 So.2d 662, affd. 96 So.2d 127) in which "per diem" damages were argued and the jury returned a verdict of $248,439, the exact amount requested by plaintiff's counsel. In *Seffert* v. *Los Angeles Transit Lines, Inc.* (1961) *supra,* 56 Cal.2d 498, the same type of argument was made and a verdict of $187,903.75 was returned, also coinciding with the sum proposed by the attorney. Despite isolated instances such as the foregoing, there can be little doubt that in the vast majority of cases the jury does not follow counsel's suggestions as to damages, regardless of the proposed mathematical basis (e.g., *Boutang* v. *Twin City Motor Bus Co.* (1956) 248 Minn. 240 [80 N.W.2d 30] [counsel argued "per diem" damages, asked for $59,405.80, verdict of $26,500; see Note (1959) *supra,* 43 Minn.L.Rev. 832, 834, fn. 13]), and conversely there are examples of substantial verdicts in cases in which there is no indication that counsel suggested any figure whatever to the jury as damages. But even where the amount awarded is identical to the sum suggested, the verdict is not excessive as a matter of law. The circumstances may indicate the prescience of the attorney or his accurate evaluation of the case. (E.g., see *Braddock* v. *Seaboard Airline R.R. Co.* (1955) *supra,* in which the Supreme Court of Florida sustained the award in spite of the defendant's contention that it was unreasonably large.)

Other objections made to the use of a mathematical formula are that it produces an illusion of certainty which appeals to the jury but can only mislead it (*Caley* v. *Manicke* (1962) *supra,* 182 N.E.2d 206, 208) and that it can result in grossly magnifying the total damages by shrewd manipulation of the unit of time employed. In *Affett* v. *Milwaukee & Suburban Transport Corp.* (1960) *supra,* 106 N.W.2d 274, 280, it is said that the absurdity of using a mathematical formula is demonstrated by the fact that an attorney could, instead of using a day as the unit of time for measurement, ask the jury to calculate his client's pain and suffering in terms of seconds. Thus, one cent for each second of pain may not seem unreasonable, but if the damages were to be calculated on this basis it would result in $86.40 for a 24-hour day, $31,536 for each year, and an absurdly high figure *in toto.*

There are at least two answers to the foregoing objections. First, whatever manner of calculation is proposed by counsel or employed by the jury, the verdict must meet the test of reasonableness. The "per diem" argument is only a

suggestion as to one method of reaching the goal of reasonableness, not a substitute for it.　　If the jury's award does not meet this test, the trial court has the duty to reduce it, and the appellate court has the authority to review the result.[9] To be sure, the standard of reasonableness permits the jury a wide latitude of discretion, but there is no convincing assurance that the accuracy of its evaluation would be enhanced by prohibiting counsel from suggesting that the plaintiff's compensation for pain and suffering be measured in aggregates of short periods of time rather than by a total sum award for a longer period.

　　Second, there exist meaningful safeguards to prevent the jury from being misled. As expected of him by his client, plaintiff's attorney will urge the jury to award the maximum amount of damages which the evidence plausibly justifies, but he has the best of reasons for refraining from grossly exaggerating his claim since, by doing so, he may so tax the credulity of the jury that it will disregard his entire argument. Counsel assumes "the risk of overpersuasion" (Brown, J., in *Hall* v. *Burkert* (1962) 117 Ohio App. 527 [193 N.E.2d 167, 169]). If he overstates his claim by the device dscribed in *Affett*, there is nothing to prevent defense counsel from pointing out this stratagem or to argue that the amount suggested is excessive and emphasize that the jury's duty is to award only a reasonable sum as compensation.[10]　　More important, the trial

[9] In *Thill* v. *Modern Erecting Co.* (1965) 272 Minn. 217 [136 N.W.2d 677], the trial court reduced a jury verdict of $642,400 to $375,000, and this was upheld on appeal. While the court agreed "with the trial court that the jury reached an excessive verdict by logical application of mathematical formulas that swelled the total sum beyond a reasonable figure," it found no fault with the process, only that the basic figures used in computation "did not take into account considerations that tend to decrease an award."

In California it has been said, "The trial judge sits as a thirteenth juror with the power to weigh the evidence and judge the credibility of the witnesses. If he believes the damages awarded by the jury to be excessive and the question is presented it becomes his duty to reduce them." (*Seffert* v. *Los Angeles Transit Lines* (1961) *supra*, 56 Cal.2d at p. 507.) The appellate court's power in this regard is more limited, but a verdict may be reduced on appeal where it is so large as to shock the court's sense of justice and raise a presumption that it was the result of prejudice. (*Johnston* v. *Long* (1947) 30 Cal.2d 54, 57, 76 [181 P.2d 645].)

[10] *Botta* states that defense counsel is placed in an unfair position when the "per diem" argument is made because, while he can argue that pain and suffering should be assessed at a lesser sum per day or per month than that suggested by the plaintiff, this can only fortify the implication that the law recognizes the "per diem" method of evaluation as valid. The defect in this approach to the problem is that it assumes the impropriety of the "per diem" argument.

court can and should instruct the jury that the argument of counsel as to the amount of damages claimed by the plaintiff is not evidence and that its duty is only to award such damages as will reasonably compensate the plaintiff for his pain and suffering. (See BAJI Nos. 174-L and 174-M.) ■■■ The court may also, if it deems appropriate, advise the jury it is not bound by any particular method of calculation in assessing damages for pain and suffering.

Every case which has considered the issue before us has emphasized the difficulty faced by a jury in attempting to measure in monetary terms compensation for injuries as subjective as pain, humiliation and embarrassment. The cases abound in broad statements such as that the matter is entrusted to the "impartial conscience and judgment of jurors who may be expected to act reasonably, intelligently and in harmony with the evidence," and that they are to award "fair and reasonable compensation" and be guided by "their observation, experience and sense of fairness and right." (See, e.g, *Botta* v. *Brunner* (1958) *supra,* 138 A.2d at pp. 718-720.) These homilies provide little assistance to the jury. Under some circumstances, the concept of pain and suffering may become more meaningful when it is measured in short periods of time than over a span of many years, perhaps into infinity. The "worth" of pain over a period of decades is often more difficult to grasp as a concept of reality than is the same experience limited to a day, a week or a month. It is this very consideration which underlies much of the controversy over the issue before us. ■■■ The fact that the "per diem" argument provides a more explicit comprehension and humanization of the plaintiff's predicament to lay jurors makes this approach an effective tool in the hands of his attorney. This alone is not, however, a sufficient reason to condemn it.

■■■ We pause to note that the "per diem" device is not beneficial exclusively to plaintiffs seeking damages. It is a double-edged sword with equal availability and utility in argument by defendant's counsel who may employ the technique of dividing plaintiff's total demand into time segments in order to illustrate how exaggerated or ludicrous the claim may be.

■■■ Denial of the "per diem" argument deprives counsel of the full fruits of effective advocacy on the issue of damages, which is not infrequently the crucial conflict in the trial of an action for personal injuries. ■■■ Only the most persuasive

reasons justify handcuffing attorneys in the exercise of their advocacy within the bounds of propriety. [See fn. 11.] We do not find them here.[11]

Defendant and amici curiae urge that even if we do not adhere to the *Botta* prohibitory rule, we should hold that the "per diem" argument is not available as a matter of right but, rather, the entire question should be subject to the discretion of the trial court. We believe this would be an undesirable solution, creating more problems than it would solve. The inevitable results would be peremptory challenges to judges on the basis of whether or not they were inclined to permit argument on a mathematical basis, and the proliferation of appeals, on the complex question of whether the court's discretion was abused in a particular case. Existing rules relating to the trial court's control over the scope of counsel's argument are sufficient to protect the integrity of the jury's decision-making role. There is no justification for holding that the "per diem" argument is governed by special standards not applicable to other types of argument.

 We come, finally, to the question whether the trial court's error in limiting counsel's argument in the present case resulted in prejudice. (Cal. Const., art. VI, §4½.) Plaintiff, a carpenter by trade, was 39 years old at the time of the accident. He was hospitalized for 12 days. He suffered cuts on his head and hands, a sliver of wood became lodged under his eyelid, and one of his front teeth was chipped in the mishap. Subsequently, his vision became impaired. He had not worn eyeglasses prior to the accident but was required to obtain a pair shortly thereafter, and a few weeks after receiving the first pair of glasses he suffered another change in his vision, requiring a different prescription for his eyeglasses.

Plaintiff did not have any pains in his back before the accident, but subsequent thereto he had severe back pains which radiated down his thighs to the knees. He was required to wear a back brace and had been unable to work in his trade as a carpenter since the accident. A medical doctor testified that plaintiff was suffering from a congenital back defect known as spondylolisthesis and, although there is some conflict in the evidence on the issue, the expert testimony strongly indicates

---

[11]In holding that counsel may properly suggest to the jury that plaintiff's pain and suffering be measured on a "per diem" basis, we do not imply that we also approve the so-called "golden rule" argument, by which counsel asks the jurors to place themselves in the plaintiff's shoes and to award such damages as they would "charge" to undergo equivalent pain and suffering.

that this condition became symptomatic as a result of the accident. The doctor also testified that an operation costing $2,000 would be necessary in order to relieve plaintiff's condition. After an examination of the entire record, we are compelled to conclude that it is reasonably probable that a result more favorable to plaintiff would have been reached if the trial court had not limited counsel's argument on the question of damages for pain and suffering. (See *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

When prejudicial error appears in the determination of the issue of damages, ''It has been held that on an appeal from a judgment where the evidence as to liability is 'overwhelming' a retrial may be limited to the issue of damages. [Citations.] Where, however, the evidence as to liability is in sharp and substantial conflict, and the damages awarded are so grossly inadequate as to indicate a compromise on the issues of liability and damages, the case should be remanded for a retrial of both issues.'' (*Clifford* v. *Ruocco* (1952) 39 Cal.2d 327, 329 [246 P.2d 651]; see also *Leipert* v. *Honold* (1952) 39 Cal.2d 462, 467 [247 P.2d 324, 29 A.L.R.2d 1185]; *Rose* v. *Melody Lane* (1952) 39 Cal.2d 481, 488-489 [247 P.2d 335]; *Cary* v. *Wentzel* (1952) 39 Cal.2d 491, 492-493 [247 P.2d 341]; *Hamasaki* v. *Flotho* (1952) 39 Cal.2d 602, 604-607 [248 P.2d 910].)

The judgment is reversed.

McComb, J., Peters, J., Tobriner, J., Peek, J., and Burke, J., concurred.

TRAYNOR, C. J.—I concur in the judgment.

In my opinion the trial court committed prejudicial error in refusing to allow plaintiff's attorney to state to the jury his monetary estimate of an appropriate award for pain and suffering. Since the jury must convert pain and suffering into dollars and cents, counsel should be permitted to advance any reasonable argument as to what its decision should be. Since there is no mathematical formula for such conversion, however, an argument that the jury should use such a formula is suspect, and an argument that damages for pain and suffering should be computed at so much per unit of time is so misleading that it should never be allowed. (See *Seffert* v. *Los Angeles Transit Lines,* 56 Cal.2d 498, 509, 513-514 [15 Cal. Rptr. 161, 364 P.2d 337], dissenting opinion.) It is one thing to urge that in view of all of the evidence of pain and suffer-

ing including its total duration, some specific sum or range of sums is reasonable. It is quite another to urge the jury to use a formula such as a mill or penny per second, or penny or nickel or dime per minute, or $10 or $20 or $100 per day. None of these formulas appears unreasonable on its face, for there is no basis in human experience for testing their reasonableness. For a year of pain and suffering, however, they yield damages ranging from $3,650 to $315,360, sums that in the light of all of the evidence in particular cases might appear to be grossly inadequate or grossly excessive. It is therefore unrealistic to seek an appropriate award for pain and suffering by the use of any so-called per diem formula. Only after counsel has determined how much damages for pain and suffering he is going to ask for can he select a per diem ratio to support his request. He could arrive at any amount he wished by adjusting either the period of time to be taken as a measure or the amount surmised for the pain and suffering for that period. It is no answer that the question-begging in his reasoning may be exposed by counterargument or challenged by an equally fictive formula leading to a different result. Truth is not served by sophistic arguments or clashes between them. (See *Seffert* v. *Los Angeles Transit Lines,* 56 Cal.2d 498, 509, 514 [15 Cal.Rptr. 161, 364 P.2d 337], dissenting opinion.)