Filed 2/2/21  Velez v. Kohl Building Maintenance CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

|  |  |
|---|---|
| GILBERTO VELEZ, | B300253 |
| Plaintiff and Respondent, |  |
| v. | (Los Angeles County Super. Ct. No. BC668124) |
| KOHL BUILDING MAINTENANCE, INC., |  |
| Defendant and Appellant. |  |

APPEAL from an order of the Superior Court of Los Angeles County, Richard L. Fruin, Judge.  Affirmed.

Clark Hill, Dean A. Olson and Autumn L. Moore for Defendant and Appellant.

Lavi & Ebrahimian, Nick Ebrahimian, Vincent Granberry, Jordan Bello; Law Office of Daniel J. Bramzon & Associates and Kevin Hermansen for Plaintiff and Respondent.

————————————

Defendant Kohl Building Maintenance, Inc. (Kohl) appeals from the trial court's June 27, 2019, order awarding $141,165 in attorney fees in a California Fair Employment and Housing Act (FEHA) matter to plaintiff and prevailing party Gilberto Velez. Kohl raises two challenges to the fee award on appeal. First, Kohl argues that Velez should have filed his complaint as a limited civil matter. Because he did not do so, Kohl contends the trial court should have declined to award any attorney fees to Velez pursuant to *Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970 (*Chavez*). Second, Kohl argues the amount of the fee award is inflated. In particular, Kohl argues the award is out of proportion when compared with the $25,000 judgment; the trial court did not consider Velez's degree of success; and the trial court did not sufficiently reduce the fee award to account for Velez's counsel's inadequate record-keeping, overstaffing, or duplicative work. We find no abuse of discretion, and therefore, we affirm.

## BACKGROUND

### A. Kohl Terminates Velez's Employment

Kohl employed Velez as a maintenance worker until the summer of 2016. According to the complaint, during the course of Velez's employment, a pipe burst and released water and debris over his body. Thereafter, Velez developed a rash that eventually required hospitalization. Velez filed a workers' compensation claim, and on August 26, 2016, Kohl terminated Velez.

On March 13, 2017, Velez entered into a compromise and release relating to his workers' compensation claim. The settlement addressed injuries to certain portions of Velez's body as well as injuries listed as "internal" and "psyche/stress." The settlement also included compensation for "earnings."

2

In May or June 2017, Velez started working for a new employer, who paid Velez a higher hourly rate than the rate he received at Kohl.

**B.  Summary of Litigation Activities and Jury Verdict**

On or about September 12, 2016, Velez hired the law firm of Lavi & Ebrahimian.  On July 10, 2017, after receiving a right to sue letter, Velez filed a complaint against Kohl alleging eight causes of action, including disability discrimination, failure to provide reasonable accommodation, failure to engage in the interactive process, retaliation, and wrongful termination.  Velez alleged he suffered damages in excess of $25,000, and prayed for compensatory damages, past and future lost income, emotional distress damages, punitive damages, attorney fees and costs, and interest.  On at least one occasion, Velez's counsel represented to the trial court that Velez was not seeking any lost income for the time period for which Velez received workers' compensation. However, Velez did not concede the workers' compensation settlement compensated him for emotional distress during this period.

According to the attorneys' billing records, between April 2018 through April 2019, attorneys at Lavi & Ebrahimian propounded and responded to written discovery, took depositions, engaged in motions practice relating to discovery, drafted motions in limine and other pretrial documents, attended the final status conference, participated in settlement negotiations, drafted trial examinations, attended trial, and provided trial support.  Two Lavi & Ebrahimian associates, a 2006 law school graduate and a 2010 law school graduate, performed these tasks; partner N. Nick Ebrahimian billed less than 10 hours for his work on the matter.

3

In January 2019, the Mathews Law Firm associated in as trial counsel for Velez. Two attorneys from the Mathews Law Firm worked on the matter: Charles T. Mathews, a litigator with over 40 years of experience, and Andrew Mathews, a 2018 law school graduate.

As a result of discussions during pretrial status conferences, only three causes of action were submitted to the jury: disability discrimination, failure to accommodate, and retaliation.

Trial began on March 26, 2019, and ended on April 4, 2019. The jury found in favor of Velez on his claims for discrimination and failure to accommodate, but did not find in his favor on the retaliation claim. The jury found that Kohl did not act with malice, oppression, or fraud. The jury awarded $25,000 in "compensatory damages for the economic and non-economic harm" Velez sustained as a result of Kohl's conduct.

## C.    Motion for Attorney Fees

Velez moved for a total of $492,000 in attorney fees as a prevailing party of a FEHA matter pursuant to Government Code section 12965, subdivision (b). Velez based his request upon a lodestar of $328,000 and a 1.5 multiplier. Lavi & Ebrahimian sought reimbursement for 339 hours at the rate of $525 per hour and 7.1 hours at the rate of $750 per hour. The Mathews Law Firm sought reimbursement for 128.35 hours at an hourly rate of $1,000 and 109 hours at an hourly rate of $150. In support of Velez's motion, each of the five attorneys who worked on the matter submitted a declaration attaching their billing records. Velez also submitted an expert declaration attesting to the reasonableness of the attorney hourly rates.

4

In opposition to the motion, Kohl argued that pursuant to *Chavez*, *supra*, 47 Cal.4th 970, the trial court should exercise its discretion to deny attorney fees because the FEHA matter should have been filed as a limited civil action. Kohl also argued that to the extent the trial court awarded any attorney fees to Velez, the amount requested was unreasonably inflated as a result of over-staffing and duplicative work.

The trial court heard Velez's motion for attorney fees on June 26, 2019. After Kohl began to argue that the trial court should apply *Chavez*, the trial court responded, "I'm not going to apply *Chavez*, so let's just drop that. They had success in a jury trial in a discrimination case." The following day, the trial court issued a three-page ruling on Velez's motion for attorney fees.

In its written ruling, the trial court awarded $141,165 in attorney fees to Velez. The trial court explained several reasons for awarding an amount lower than the $492,000 requested by Velez's counsel. First, the trial court found counsel sometimes used block-billing; some of the time notations were unreliable, especially when time records between counsel were compared; and counsel did not explain their time-keeping practices under oath.

Second, Velez failed to demonstrate that "all of the projects to which his attorneys devoted time were tasks required for a successful result." The trial court observed that Velez dropped some claims and some of the evidence Velez's counsel pursued "came to naught." Further, Velez's plea for economic loss had to be reduced for the period that Kohl demonstrated Velez received workers' compensation.

Third, Velez's fee request did not include any reduction for the time that it took the Mathews firm to "get up to speed." The

5

trial court also observed that after the Mathews firm was associated in, Lavi & Ebrahimian remained on the matter, and there was some "overlap" among the attorneys preparing the matter for trial.

Fourth, the two Lavi & Ebrahimian associates each examined a witness briefly at trial. However, Charles Mathews conducted all other examinations. Accordingly, there was no reason for each of the three attorneys to be present and billing for each day in trial or at each final status conference hearing prior to trial.

The trial court also observed that the hourly rate of $525 for each of the two associates at Lavi & Ebrahimian appeared to be inflated when weighed against their ability to perform tasks efficiently. Indeed, the trial court reduced the hourly rate for three attorneys on the matter: Charles Mathews from $1,000 to $600 per hour, and for the two associates from $525 to $350 per hour. Further, the trial court recollected that Andrew Mathews was a newly-admitted attorney whose participation on the matter was for training, and therefore should not be included in the fee award. Thus, the trial court struck all of the time billed by Andrew Mathews.

Applying the reduced hourly rates and striking the time for Andrew Mathews, the trial court determined the lodestar was $201,165. The trial court then deducted $60,000 from this amount because "an amount must be deducted for the time required by the Mathews firm to learn the case from attorneys in the Ebrahimian firm who nonetheless continued to represent [Velez]; an amount must be deducted because of the overlap and communications required among the four attorneys preparing the case for trial; an amount must be deducted for the claims that

6

had no merit . . . ; and the trial expense should be reduced for having an unnecessary number of attorneys present throughout the trial."

Additionally, although Velez's counsel may have taken on the matter pursuant to a contingency arrangement, the bulk of the work was incurred during trial preparation between December 2018 and April 5, 2019. Accordingly, the trial court concluded a multiplier was not supported.

The trial court also observed that the verdict of $25,000 "was at the boundary between limited and unlimited jurisdiction. The court, however, declines [Kohl's] request that the court on that basis reject an award of reasonable attorney's [*sic*] fees."

Kohl timely appeals the trial court's award of attorney fees.

## DISCUSSION

### A.  Standard of Review

We review an award of attorney fees under FEHA for an abuse of discretion. (*Chavez*, *supra*, 47 Cal.4th at p. 989.) "Under this standard, we do not disturb the award unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner." (*Stratton v. Beck* (2018) 30 Cal.App.5th 901, 915.) On appeal, it is the appellant's burden to demonstrate the trial court abused its discretion in awarding attorney fees. (*Gonzalez v. Santa Clara County Dept. of Social Services* (2017) 9 Cal.App.5th 162, 169.)

### B.  The Trial Court Did Not Abuse Its Discretion in Awarding Attorney Fees to Velez

Kohl argues that pursuant to *Chavez*, the trial court should not have awarded any attorney fees to Velez.

7

In *Chavez*, the jury awarded the plaintiff a total of $11,500 in damages, and the plaintiff then sought $870,935.50 in attorney fees. (*Chavez*, *supra*, 47 Cal.4th at p. 976.) In its written order denying attorney fees to the plaintiff, the trial court observed, "that [the] plaintiff's case at trial had been 'overwhelmingly devoted to liability,' that none of [the] plaintiff's witnesses gave any direct testimony about economic damages, and that [the] plaintiff had offered no rebuttal to the testimony of [the] defendants' expert, who put [the] plaintiff's economic loss . . . at 'just under $1,000.' According to the court, [the] plaintiff's evidence of noneconomic damages 'was equally sparse . . . .' " (*Id.* at p. 981.) Thus, the trial court exercised its discretion pursuant to Code of Civil Procedure section 1033, subdivision (a)[1] to deny attorney fees to the plaintiff. (*Ibid.*)

The California Supreme Court held that Code of Civil Procedure section 1033, subdivision (a) "gives a trial court discretion to deny attorney fees to a plaintiff who prevails on a FEHA claim but recovers an amount that could have been recovered in a limited civil case." (*Chavez*, *supra*, 47 Cal.4th at p. 976.) Notably, the court provided guidance to assist trial courts in evaluating when they should exercise such discretion. To determine whether a matter should have been filed as a limited civil case, "the trial court should consider FEHA's underlying policy of encouraging the assertion of meritorious

_____

[1] Code of Civil Procedure section 1033, subdivision (a) states: "Costs or any portion of claimed costs shall be as determined by the court in its discretion in a case other than a limited civil case in accordance with Section 1034 where the prevailing party recovers a judgment that could have been rendered in a limited civil case."

8

FEHA claims, and it should evaluate the entire case in light of the information that was known, or should have been known, by the plaintiff's attorney when the action was initially filed and as it developed thereafter." (*Id*. at p. 986.) "[T]he trial court should exercise caution to avoid 'hindsight bias,' which is the recognized tendency for individuals to overestimate or exaggerate the predictability of events after they have occurred." (*Id*. at pp. 986-987.) "If, based on the available information, the plaintiff's attorney might reasonably have expected to be able to present substantial evidence supporting a FEHA damages award in an amount exceeding the damages limit . . . for a limited civil case . . . , the trial court should not deny attorney fees merely because, for example, the trier of fact ultimately rejected the testimony of the plaintiff's witnesses or failed to draw inferences that were reasonably supported, although not compelled, by the plaintiff's evidence. But if, to the contrary, the trial court is *firmly persuaded that the plaintiff's attorney had no reasonable basis to anticipate* a FEHA damages award in excess of the amount recoverable in a limited civil case, and also that the action could have been fairly and effectively litigated as a limited civil case, the trial court may deny, in whole *or in part*, the plaintiff's claim for attorney fees and other litigation costs." (*Id*. at p. 987, italics added.)

Kohl argues that Velez "knew at the time he filed his [c]omplaint [on July 10, 2017,] that he could not recover damages exceeding $25,000." In particular, Kohl notes that Velez's damages were limited to the "few weeks" between March 2017 (the date through which Velez received workers' compensation), and May or June 2017 (when Velez accepted a position that paid

9

him a higher hourly wage). Accordingly, Kohl contends the trial court should have denied attorney fees to Velez.

Notwithstanding his conclusory claim that Velez "knew" he would not recover more than $25,000, Kohl does not actually demonstrate this was so. Indeed, the record reflects that Velez's counsel reasonably could have expected to present substantial evidence that Velez was entitled to an award greater than the jurisdictional limit. The jury awarded Velez $25,000 for his discrimination and failure to accommodate claims—a mere one cent less than the amount that would have qualified the matter as one of unlimited civil jurisdiction. (Code Civ. Proc., § 85, subd. (a).) Moreover, the jury considered a third cause of action for retaliation as well as a claim for punitive damages. Success on either of these claims could have increased Velez's award above the $25,000 threshold.[2] That the trier of fact ultimately rejected these claims is not dispositive. (See *Chavez*, *supra*, 47 Cal.4th at p. 987.) Further, as Velez correctly argues in his brief, the amount to be awarded for non-economic harm such as pain and suffering is inherently subjective and not easily amenable to concrete measurement. (See *Beagle v. Vasold* (1966) 65 Cal.2d 166, 172 ["the jury is asked to evaluate in terms of money a detriment for which monetary compensation cannot be ascertained with any demonstrable accuracy"].)

Kohl construes the trial court's statement that it was "not going to apply *Chavez*, so let's just drop that," as the trial court's

---

[2] The parties do not argue the merits of either Velez's retaliation claim or his claim for punitive damages. Further, the appellate record does not include any record of the trial proceedings.

refusal to be bound by Supreme Court precedent. We do not interpret the trial court's statement so narrowly. *Chavez* does not compel a trial court to deny an award of attorney fees to a plaintiff when he recovers an amount of damages that falls below the jurisdictional threshold. Rather, *Chavez* clarified that a trial court has the *discretion* to do so when plaintiff's counsel knew or should have known at the time the complaint was filed that damages would not exceed the jurisdictional limit. (*Chavez, supra*, 47 Cal.4th at p. 987.) The trial court acknowledged Velez "had success in a jury trial in a discrimination case," and that the verdict of $25,000 "was at the boundary between limited and unlimited jurisdiction." The court's statement that it was "not going to apply *Chavez*" was consistent with its determination that the facts of the current case did not support a denial of attorney fees under the guidance outlined in *Chavez*. Accordingly, Kohl fails to show the trial court abused its discretion in awarding attorney fees to Velez.

## C.     The Trial Court Did Not Abuse Its Discretion in Awarding $141,165 in Attorney Fees

Kohl next argues the trial court abused its discretion in awarding $141,165 in attorney fees. Specifically, Kohl argues the trial court failed to take into account Velez's degree of success, and contends the fee award is out of proportion to the $25,000 judgment. Kohl argues the trial court should have reduced the fee award to account for overstaffing on the matter and duplication of work. Kohl also contends the court abused its discretion in awarding Velez's "counsel the time they requested," notwithstanding the court's finding that time entries were unreliable.

11

Kohl's arguments are without merit.  First, we are mindful that " '[a] rule of proportionality [between the amount of damages and an attorney fee award] would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts.' "  (*Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 164.)  Accordingly, we do not find an attorney fee award of $141,165 following a five-day jury trial that resulted in a $25,000 judgment in Velez's favor to be so out of proportion that it is arbitrary, capricious, or patently absurd.

Second, as set forth in its three-page ruling on Velez's motion for attorney fees, the trial court accounted for each of the issues Kohl raises here when it reduced the fee award from $492,000 to $141,165.  For example, rather than award Velez's counsel all the time they requested, the trial court struck all 109 hours sought by attorney Andrew Mathews in part because it "[was] described in block billing format."  Further, after significantly reducing the hourly rate for three of Velez's attorneys in part due to counsel's inefficiency, the trial court deducted $60,000 from the fee award expressly to address issues of overstaffing, duplication of work, and Velez's rate of success.  Thus, Kohl has not demonstrated that the trial court abused its discretion in awarding $141,165 in attorney fees to Velez.

**DISPOSITION**

The trial court's June 27, 2019, order awarding attorney fees in the amount of $141,165 is affirmed.  Velez is to recover his costs on appeal.

NOT TO BE PUBLISHED


FEDERMAN, J.*


We concur:



CHANEY, J.



BENDIX, Acting P. J.

---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13